**James A. HAMILTON, Jr. and wife, Mary Nelle Hamilton, Plaintiffs/Appellees,**

v.

**GIBSON COUNTY UTILITY DISTRICT, Defendant/Appellant.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Aug. 26, 1992.

Application for Permission to Appeal Denied by Supreme Court Nov. 30, 1992.

Richard Gossum, Trenton, for defendant/appellant.

James A. Hamilton III, Farmer, Moore & Jones, Dversburg, for plaintiffs/appellees.

TOMLIN, Presiding Judge (Western Section).

James A. Hamilton, Jr. and wife, Mary Nelle Hamilton (hereafter "Hamilton" or "plaintiff")[1] brought an action for breach of contract against Gibson County Utility District ("defendant") claiming defendant unilaterally terminated health insurance coverage for Hamilton and his wife subsequent to Hamilton's retirement from defendant. The trial court granted plaintiff's

motion for summary judgment and denied defendant's motion for summary judgment. The singular issue presented on appeal by defendant is whether the trial court erred in granting plaintiff's motion for summary judgment and denying defendant's motion for summary judgment. Plaintiff presents two issues on appeal: Whether the trial court erred (1) in denying plaintiff's motion to amend the complaint so as to certify this suit as a class action; and (2) in refusing to award attorney fees to plaintiff. As to plaintiff's issues, we find no error. However, we are of the opinion that the trial court erred in granting plaintiff's summary judgment motion.

In his complaint plaintiff alleges he was employed by defendant in the position of office manager from March, 1962, until August 23, 1990. In 1972, defendant and Blue Cross/Blue Shield (BCBS) entered into a contract whereby BCBS provided a major medical/group health insurance plan for defendant's employees. Under the plan, employees paid a monthly premium for individual or family coverage, with defendant paying a portion of the premium. Plaintiff alleges in part that:

> The resolution further states that upon twenty-five (25) years of service or more or upon reaching the age of sixty (60) then the GIBSON COUNTY UTILITY DISTRICT will pay 100% of the employee's health insurance premium. The resolution continues by saying the employee shall remain under the health insurance plan of defendant until said employee reaches the age of sixty-five (65) at which time the employee will be provided supplemental health insurance coverage.

Plaintiff contends his service to defendant was continuous and uninterrupted from March, 1962, until August 23, 1990, when he terminated his employment by resignation. At that time plaintiff was sixty-three years of age and had been an employee of defendant for more than twenty-eight years.

---

1. This suit arises from James Hamilton's employment by defendant. Hamilton's wife has only an ancillary interest as a named dependent. Hence, Hamilton will be referred to as a singular plaintiff.

In addition, plaintiff's complaint alleges as follows:

8. Plaintiffs allege that the resolution referred to hereinabove and marked as Exhibit "A" hereto is a valid and binding contract and was part of the employment benefits which vested during the course of plaintiff, JAMES A. HAMILTON, JR.'s employment with defendant. That due to the fact plaintiff, JAMES A. HAMILTON, JR., was employed by defendant for more than twenty-five (25) years and also due to the fact that he was more than sixty (60) years of age at the time of his resignation, plaintiffs were fully and completely vested in the health insurance plan which was previously offered to the defendant's employees and under which plan plaintiff, JAMES A. HAMILTON, JR., elected to participate.

9. Plaintiffs stay [sic] that the only condition precedent to an employee becoming 100% vested was attaining twenty-five (25) years of service to the defendant or attainment of the age of sixty (60). That plaintiff, JAMES A. HAMILTON, JR., at the time of his resignation, had provided more than twenty-five (25) years of service to defendant and was also more than sixty (60) years of age. That plaintiff, JAMES A. HAMILTON, JR., was influenced and induced to remain in the employment of the defendant, GIBSON COUNTY UTILITY DISTRICT, because of the retirement benefits, including the health insurance coverage, which defendant provided to its employees. That plaintiffs relied upon the representations made to them by the Commissioners of the GIBSON COUNTY UTILITY DISTRICT during the course of plaintiff, JAMES A. HAMILTON, JR.'s, employment and also relied upon the various resolutions which were passed by the Commissioners of the GIBSON COUNTY UTILITY DISTRICT prior to August 23, 1990, specifically regarding retirement benefits and health insurance coverage.

10. Plaintiffs say that the recent action by the Commissioners of the GIBSON COUNTY UTILITY DISTRICT in refusing to pay plaintiffs' health insurance premiums is illegal improper, arbitrary and capricious and totally contrary to and in contravention of the specific resolutions adopted by the Commissioners of the GIBSON COUNTY UTILITY DISTRICT during the course of plaintiff, JAMES A. HAMILTON, JR.'s, employment with defendant. Plaintiffs say that plaintiff, JAMES A. HAMILTON, JR., was fully and completely vested in the retirement plan and health insurance plan provided defendant's employees prior to the resignation of plaintiff, JAMES A. HAMILTON, JR., on August 23, 1990.

11. Plaintiffs say the resolutions adopted by the Commissioners of the GIBSON COUNTY UTILITY DISTRICT prior to August 23, 1990, and specifically, the 1985 Resolution attached hereto, provide health insurance coverage for employees and their dependents subsequent to retirement provided such benefits have become vested prior to an Employee's retirement. Plaintiffs in the instant action say that since plaintiff, JAMES A. HAMILTON, JR., had served as an employee of the GIBSON COUNTY UTILITY DISTRICT for more than twenty-five (25) years and that he was more than sixty (60) years of age at the time of his retirement on August 23, 1990, that defendant pursuant to the Resolutions referred to herein should be absolutely responsible for the payment of the plaintiffs entire health insurance premiums.

In response to plaintiff's complaint, defendant filed an answer, which we quote in material part as follows:

3. Defendant admits that it instituted a group health insurance plan for its employees and their dependents many years ago.

Defendant admits that a resolution was adopted in May, 1985, regarding its group health insurance plan. Defendant avers that the minutes, which are partially attached to the complaint as Exhibit A, show that the Board of Commissioners took such action in light of a then recent amendment to Section 7–82–308(a) of Tennessee Code Annotated; that Section 7–82–308 deals with compensation of

commissioners of utility districts; and that the 1985 amendment to that section allowed commissioners, in addition to their monthly monetary compensation, to receive group medical insurance coverage as provided employees....

4. The resolution purports to show the coverage of the group health plan as to commissioners, employees, and dependents. That group plan coverage was then and is now provided by Blue Cross–Blue Shield of Tennessee.

Defendant avers that the group health plan coverage as provided by Blue Cross–Blue Shield did not and does not include provision for continued membership in the group after an employee or commissioner has retired.

Further, Defendant avers that the statute, with which the resolution purportedly was seeking to comply, makes no provision for inclusion of retired commissioners.

Further, the group health plan provides for coverage supplemental to Medicare at age 65, not 60 as the resolution states.

Further, the resolution sets out guidelines for employee participation in payment of premiums, but those guidelines have never been applied. Instead, all employees' insurance premiums have been paid in full since 1982....

6. Defendant admits that upon discovery of the fact that retired employees could not be members of the group under its health plan, it notified plaintiffs of that fact.

7. Defendant admits that it notified plaintiffs that federal law (COBRA) provided that they may maintain their insurance by reimbursing defendant for the premiums for a period of 18 months. However, defendant is advised by its group health plan carrier that after the expiration of that time, a retired employee may no longer be a member of the group.

8. Defendant denies that the resolution is a valid and binding contract. The minutes show that after "a discussion of the Utility's group health plan," the Board purported to establish certain guidelines for coverage of "the group plan." Defendant avers that the parties were under the mistaken belief that adoption of such a resolution would change the defendant's group plan. However, defendant is advised that, contrary to the resolution, its group plan does not allow retired commissioners or employees to be members of the group.

9. Defendant admits plaintiff James A. Hamilton, Jr.'s age and years of service. Defendant is unable to admit or deny the remainder of the allegations contained in paragraph 9 of the complaint but demands strict proof thereof.

10. Defendant avers that it stopped paying plaintiff's insurance premiums upon its discovery that plaintiff, no longer being an employee, could not be a member of the group for coverage under defendant's group insurance plan. Further, it is not possible for defendant to make plaintiff a member of the group by paying his premium.

11. In response to paragraph 11 of the complaint, defendant avers that the minutes of the May, 1985, meeting show on their face an intent to effect guidelines with respect to its "group health plan" and not an intent to enter into any contract separate and apart from said "group health plan." ...

13. Defendant's response to paragraph 13 of the complaint is that, even if it paid plaintiffs' premiums, it could not make the group insurance plan carrier deem plaintiffs to be members of the group for medical coverage.

14. Defendant avers that it did not take away plaintiff's coverage after retirement in that coverage after retirement is not permitted under the plan.

Both parties filed motions for summary judgment. Plaintiff supported his motion with his own affidavit as well as affidavits of four former commissioners of defendant. Defendant's summary judgment motion relied upon depositions of these same ex-commissioners, along with affidavits of

Ben Birdwell and Paula Golden.[2]

The pertinent portions of defendant's adopted resolution of May, 1985 that plaintiff contends created a contractual liability on the part of defendant are as follows:

Manager Dedmon and Attorney Malone presented the following insurance coverage for employees. In compliance with the Tennessee Code Annotated, Section 7–82–308(a), as amended April 10, 1985, The Board of Commissioners after full consideration and discussion of the Utility's group health plan as it applies to working employees, commissioners and all personnel covered by the group plan while an employee is working or under disability and application of the group plan for dependents after the death of a person covered by the plan.

Thereafter, it was resolved and passed by the Commissioners that the coverage of the group plan and application thereof shall be as follows, all which shall include employees and commissioners.

(1) Each employee and commissioner's coverage under the plan shall continue whether the person retires, becomes disabled or dies, and in event of death, the surviving dependent shall continue coverage as provided herein.

. . . . .

(4) An employee shall be covered by medical insurance or supplement under the group plan when the employee has attained the age of 60 years, or becomes disabled to serve as a full-time employee. At the age of 60 years such person will be classed as a 25 year employee, though he has not served that period.

. . . . .

(6) The following schedule of ratio premium payments shall be arrived at as shown below:

| Years of work | Employer payment | Employee pay |
|---|---|---|
| 0—10 | 0 | 100% |
| 10—15 | 25% | 75% |
| 15—20 | 50% | 50% |
| 20—25 | 75% | 25% |
| 25 or more | 100% | 0% |

2. At that time Birdwell was an employee of BCBS and Golden was an employee of defendant.

The rescinding resolution adopted by the new board of defendant in December, 1990, reads as follows:

Attorney Gossum reported that the resolution adopted in May 1985 for payment of retired employees health insurance was in conflict with the Blue Cross–Blue Shield policy. Motion made by Bob Parkins, 2nd by Jim Holman to rescind the resolution adopted at the May 20, 1985 meeting. Motion carried by vote of 3 to 1 in favor.

## I. THE SUMMARY JUDGMENT ISSUE

Plaintiff contends that this court should affirm the granting of his motion for summary judgment, while defendant contends that we should reverse the action of the trial court and enter summary judgment in his favor.

Summary judgment is designed to provide a quick, inexpensive means of concluding cases on issues where there is no dispute regarding material facts. A motion for summary judgment goes to the merits of a case, and one faced with such a motion can neither ignore it or treat it lightly. This procedure is not designed as a substitute for the trial of factual issues. A summary judgment can be granted only when the pleadings, stipulations and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Phillips v. Pittsburgh Consol. Coal Co.*, 541 S.W.2d 411 (Tenn. 1976).

In ruling on motions for summary judgment, both the trial court and this court must consider the matter in the same manner as a motion for a directed verdict made at the close of plaintiff's proof; i.e., we must view all affidavits, etc. in the light most favorable to the opponent of the motion, and draw all legitimate conclusions of fact in the opponent's favor. If, after so doing, a disputed issue of material fact

remains, the motion must be denied. *Stone v. Hinds,* 541 S.W.2d 598 (Tenn.App. 1976). Furthermore, the fact that both parties to a lawsuit seek summary judgment, each contending that no genuine issue of material fact exists, does not require the conclusion that no such factual issue exists. 16 *Tenn.Jur.,* Judgments and Decrees, § 91 (1984).

■ In the court below and in this court plaintiff has presented his case as one primarily of a contractual nature. The argument is that defendant "contracted" to provide these benefits to Hamilton in consideration for his continued service as its office manager. On the other hand, it appears from the record that defendant relied heavily on the fact, believed to be true at that time, that the BCBS plan did not permit the providing of coverage for retirees. In granting plaintiff's summary judgment motion and holding that defendant had to provide health insurance benefits to plaintiff, the trial court did not specify its reasons therefor.

■ Insurance coverage provided to employees under a group health insurance plan are classified as "welfare benefit" plans as opposed to pension benefit plans, whereby retirement income is provided for employees. The law is clear that there is no legal requirement on the part of a governmental entity to provide a welfare benefit plan to its employees and if it chooses to do so, the plan may be modified or terminated at any time. *State ex rel Thompson v. City of Memphis,* 147 Tenn. 658, 251 S.W. 46 (1923).

■ The majority of cases that we have unearthed in this area are suits brought pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* (1974). By its provisions, ERISA does not apply to governmental entities. Furthermore, under ERISA, pension or retirement income rights automatically vest. Employee benefits in welfare benefit plans, however, are not protected by ERISA's vesting umbrella. Nonetheless, employers can contract to provide non-terminable, post-employment welfare benefits to retired employees irre-spective of ERISA's vesting protection. Retirees seeking to establish entitlement to such benefits have the burden of proving an employer's non-termination intent. In the absence of ambiguity, resolution of this issue turns on the benefit plan documents. *Matter of Consol. Mutual Ins. Co.,* 77 N.Y.2d 144, 565 N.Y.S.2d 434, 435, 566 N.E.2d 633, 634 (1990).

■ Plaintiffs have the burden of proving vested welfare benefits. *Anderson v. Alpha Portland Indus., Inc.,* 836 F.2d 1512, 1517 (8th Cir.1988). Welfare benefit plans may be modified or terminated absent the employer's contractual agreement to the contrary. *Id.* at 1516–17. In *DeGeare v. Alpha Portland Indus., Inc.,* 837 F.2d 812 (8th Cir.1988), the court held that an employer's promise to future retirees that benefits "will continue" could not be read as a promise of vested lifetime benefits in the face of a termination clause.

In *Howe v. Varity Corp.,* 896 F.2d 1107 (8th Cir.1990), the court dealt with an appeal brought by representatives of certain former employees and retirees under ERISA to have portions of a terminated employee welfare benefit plan reinstated. The Eighth Circuit made the following observation about both *Anderson* and *DeGeare:*

■ As *Anderson* and *DeGeare* make clear, the mere fact that employee welfare benefits continue in retirement does not indicate that the benefits become vested for life at the moment of retirement. No inference of an intent to vest can be presumed from the fact the benefits are retirement benefits. *DeGeare,* 837 F.2d at 815; *Anderson,* 836 F.2d at 1516–17. Indeed, the benefits at issue here are "retirement benefits" in a technical sense only. Unlike pension benefits, coverage under the welfare benefit plan does not begin at an employee's retirement. Rather, as plaintiffs themselves strenuously argue, the welfare benefits simply continue when an employee retires. Nothing in the documents establishes retirement as a vesting point.

The district court's reliance on extrinsic evidence is also misplaced. The court found that in the past defendants had exempted retirees from plan changes, thereby implying that retirees' benefits were "untouchable." As a general rule, however, extrinsic evidence may not be relied upon where the documents are unambiguous on their face. *See, e.g., Anderson,* 836 F.2d at 1517 ("[I]f the contract is deemed ambiguous, *then* the court may weigh extrinsic evidence to aid in its construction.") (quoting [*Local Union No. 150–A v.*] *Dubuque Packing,* 756 F.2d [66] at 69) (emphasis added). *Id.* at 1110.

In the case before us, we have no specific contract document pertaining to plaintiff's employment. In addition, there is no employee handbook describing a benefit plan that might be considered a part of the employment agreement between defendant and plaintiff. What we do have are the 1988 Board resolution, the BCBS booklet, and the contract between defendant and BCBS.

Article XV of the BCBS policy provides that the master policy is automatically terminated for non-payment of premium within thirty days of the due date. In such a case no subscriber (employee) is entitled to any benefit following the thirty day grace period. Article XVII of the same policy provides that the insurance contract may be terminated as set forth in Article XV or may be terminated at the end of any calendar year by either the defendant or BCBS, giving at least thirty days written notice.

In addition, defendant's employees were provided a booklet prepared by BCBS entitled "Custom Coverage Plan", which contains the following language on its cover:

This booklet contains only a general description of the benefits available to you under your new Plan. The benefits described are subject to all the terms, conditions, limitations and definitions in the contract, as well as all provisions required by state law. For specific information, the contract is available for your study through your employer.

Page 9 of this booklet reads in pertinent part as follows:

Continuation Coverage will terminate: ... (b) where the employer cancels or otherwise terminates coverage for employees under the group master contract for which this booklet was prepared ...

After reviewing this record, we are of the opinion that this is not a proper case for summary judgment in favor of either party as there are material issues of fact to be resolved by trial.

A complication has been brought about by a post-trial/pending appeal stipulation of the parties. Specifically, the two affidavits defendant relied on in support of his motion for summary judgment stated that the BCBS group policy issued to defendant did not allow or permit the extending of health care coverage to retirees of defendant, therefore the action of defendant's board in December, 1990, in attempting to extend same was contrary to the terms of the policy. As has already been noted, defendant's minutes reflect that the action of rescission was taken in December, 1990.

The stipulation provides that the BCBS policy issued to defendant could be amended to provide that retirees under age 65 would be eligible for coverage under the policy; that defendant specifically requested in February, 1992 that the policy be amended to make health insurance available to retirees at retirees' expense; that certain statements in the affidavit of witness Birdwell be disregarded for purposes of appeal; and that the question of whether plaintiff's retirement caused plaintiff to be ineligible for coverage under defendant's group health care plan is no longer an issue in this case.

This court is of the opinion that if these facts have any materiality to the case, they should be considered by the trial court.

## II. THE CLASS ACTION ISSUE

Rule 23.01 T.R.C.P. reads as follows:

**Prerequisites to a Class Action**

One or more members of a class may sue or be sued as representative parties on

behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

In *Albriton v. Hartsville Gas Co.*, 655 S.W.2d 153 (Tenn.App.1983), regarding the invoking of Rule 23, this court stated:

> Each prerequisite must be satisfied. The burden is on the party invoking Rule 23 to show that each has been satisfied. (Citation omitted)

> . . . . .

> Plaintiffs have the burden of establishing the number of members of the class and also that joinder is not practicable. (Citation omitted).

*Id.* at 154–55.

In *First American National Bank of Nashville v. Hunter*, 581 S.W.2d 655 (Tenn.App.1978), as to the application of the same rule, the Middle Section of this Court stated as follows:

> In *Bennett v. Stutts*, Tenn.1975, 521 S.W.2d 575, the Supreme Court stated that Rule 23 of the Rules of Civil Procedure did not create rights but regulated procedure. From this, it is deducible that the prosecution of a class action is not a matter of right which may be demanded. It is, more accurately, a procedural privilege to be utilized within the sound discretion of the Trial Judge.

*Id.* at 659.

In his brief, plaintiff contends that "plaintiffs, other retirees as well ... twenty-five (25) active employees and any dependents of the active employees of the Gibson County Utility District are similarly situated". By the same token, the parties stipulated that only two employees other than plaintiff were retired at the time defendant rescinded the May, 1985 resolution.

From the record we find no reason given by the trial court for the denial of plaintiff's motion. It is plaintiff's burden in this case to show how and why the trial court abused its discretion, if in fact it did. There has been no such abuse of discretion shown. Accordingly, we find this issue is without merit.

In light of our disposition of this case, the issue of awarding plaintiff's attorney's fees is now moot.

We hold that the trial court was correct in denying plaintiff's motion to certify this case as a class action. The order granting summary judgment to plaintiffs is reversed. The order denying summary judgment to defendant is affirmed. The trial court's denial of attorney fees for plaintiff is affirmed. This cause is remanded to the Chancery Court of Gibson County for a trial on the merits not otherwise inconsistent with the provisions of this opinion. Costs in this cause on appeal are taxed to plaintiffs, for which execution may issue if necessary.

CRAWFORD and FARMER, JJ., concur.