## IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
November 15, 2017 Session

## HIGHLANDS PHYSICIANS, INC. v. WELLMONT HEALTH SYSTEM

**Direct Appeal from the Law Court for Sullivan County**
**No. C41368C      E. G. Moody, Chancellor**

_____

**No. E2017-01549-COA-R3-CV**

_____

This is an interlocutory appeal as of right from certification of a class. Plaintiff, a physician-owned independent practice association, and Defendant, an organization that owns several hospitals and medical clinics, formed a physician-hospital organization to further their mutual interests, such as joint negotiations with entities such as insurance companies. Plaintiff filed this class action lawsuit alleging, among other things, that Defendant breached the contractual non-solicitation and non-competition agreement between the parties, which caused harm to Plaintiff and its members. Plaintiff moved to certify a class consisting of itself and its members, and Defendant objected. The trial court certified the class with respect to all claims pursuant to each of the three categories of class actions specified in Rule 23.02 of the Tennessee Rules of Civil Procedure. We reverse the trial court's certification of the class pursuant to Rule 23.02 subsection (1) of the Tennessee Rules of Civil Procedure. We affirm the judgment of the trial court and certification of the class pursuant to subsections (2) and (3) of Rule 23.02 and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Law Court Reversed in part, Affirmed in part, and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

J. Ford Little and William Kyle Carpenter, Knoxville, Tennessee, for the appellant, Wellmont Health System.

Elizabeth Hutton, Johnson City, Tennessee, and Gary Michael Elden, Pro Hac Vice, and Matthew C. Wolfe, Pro Hac Vice, Chicago, Illinois, for the appellee, Highlands Physicians, Inc.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

This is an interlocutory appeal as of right filed pursuant to Tennessee Code Annotated section 27-1-125 by the Defendant/Appellant Wellmont Health System ("Wellmont"). Our review on appeal is therefore limited to the trial court's certification of a class of plaintiffs pursuant to Rule 23 of the Tennessee Rules of Civil Procedure and does not extend to the merits of the underlying case.

Plaintiff/Appellee Highlands Physicians, Inc. ("HPI") is a doctor-owned independent practice association consisting of healthcare providers whose practices are primarily located in Northeast Tennessee and Southwest Virginia. HPI's membership consists of about 1,500 physicians and other health care practitioners. The organization was formed to represent the interests of its physicians and their practices in negotiations and collaborative ventures with health care payors and hospitals. Wellmont is a Tennessee corporation that operates multiple hospitals and outpatient clinics in generally the same geographic area as HPI. Wellmont is also the successor by merger to Bristol Memorial Hospital, Inc. ("Bristol Hospital").

In 1993, HPI and Bristol Hospital, Wellmont's predecessor, formed what is now known as Highlands Wellmont Health Network (the "Network"). The Network is a Physician-Hospital Organization ("PHO"), which is a common type of organization formed between doctors and hospitals to promote objectives such as negotiating contracts with health insurance companies (also known as "payors"). Both HPI and Wellmont are fifty percent owners of the Network, and they are parties to a Stockholders Agreement ("SA") that governs the rights and obligations of the parties in the Network. In the original SA, Section 3 set forth each party's agreement to a "Covenant Not to Establish Entity Similar to the [Network]." In general, this section provided that the parties, their officers, their shareholders, and their members were prohibited from competing with the Network or soliciting the Network's payors. In 1995, Wellmont and HPI purportedly entered into an amendment of the SA (the "Amendment"), but the record is unclear as to whether either party has ever located a fully executed copy thereof. Whether the Amendment is valid and enforceable is not for determination on this appeal, but while the purported Amendment reiterated the parties' non-competition and non-solicitation agreement, it removed those duties from the officers, directors, shareholders, and members of HPI and Wellmont.

HPI and Wellmont operated well within the confines of the Network for several years. However, around 2011 or 2012, the senior leadership at Wellmont began to

change, and the relationship between HPI and Wellmont deteriorated over the next few years.  According to HPI, the new leadership at Wellmont took an adversarial position to HPI and HPI's members who were not employed by Wellmont.  HPI sets forth a multitude of allegations in its verified complaint to support the proposition that, under new leadership, Wellmont began to deliberately undermine HPI, dismantle the Network, and reduce resources previously devoted to maintaining clinical integration[1] within the Network.  HPI alleges that this had a detrimental effect on the Network's ability to maintain a high level of clinical integration.  Additionally, HPI alleges that Wellmont unlawfully diverted two major insurance contracts from the Network to Wellmont individually.  The first contract was entered into separately by Wellmont with Humana Medicare Advantage in June 2012 (the "Humana Contract.").  HPI apparently considered litigation against Wellmont at that time but ultimately decided against it.  The second contract was entered into separately by Wellmont and Cigna in 2014.  HPI alleges that Wellmont aggressively solicited Cigna to make a separate deal with Wellmont, including telling Cigna that the Network and/or HPI were not sufficiently clinically integrated.  HPI claims that these actions by Wellmont constitute a clear breach of the Stockholders Agreement and cost HPI and its members tens of millions of dollars in damages.

Based on the aforementioned conduct, HPI filed a verified complaint against Wellmont on February 2, 2016,[2] for claims of breach of contract, declaratory and injunctive relief, breach of fiduciary duty, defamation, tortious interference with a business, and deceit of a third party.  With respect to declaratory and injunctive relief, HPI requests that the trial court make the following declarations and enjoin Wellmont from taking any action inconsistent with such declarations:

1. The SA does not permit Wellmont to contract with an existing Network payor separately from the Network or solicit payors of the Network (except, if the Amendment is effective, as provided in its Section 3.2.2(i)).

2. In Section 3.2.2(i) of the Amendment, the phrase "managed care networks competing with" does not include a network that already

---

[1]According to the Network's 2011 Annual Report to its Members, the Network defined "clinical integration" as "individual providers cooperating in an interdependent fashion so they can pool infrastructure and resources to develop, implement and monitor evidence-based protocols and various systematic processes, which enable them to furnish higher quality care in a more efficient manner."  The Network's status as clinically integrated has legal consequences on its ability to negotiate contracts with payors on behalf of its shareholders.

[2]HPI and Wellmont previously entered into a "Standstill Agreement" that tolled the statute of limitations on these claims for a period of time to allow the parties to attempt to resolve the matter without resorting to litigation.  This case was filed pursuant to the Standstill Agreement, and HPI's complaint was therefore deemed to have been filed on June 22, 2015.

includes the HPI-Wellmont Network.

3.      By its conduct, Wellmont breached SA 3.

4.      By its conduct, Wellmont has breached its fiduciary duties of care and loyalty to HPI.

5.      By its conduct, Wellmont has committed an intentional tort damaging HPI and its members, as set out [in the complaint].

6.      Each shareholder must put the interest of the Network ahead of its own interest.

7.      Absent consent of both shareholders, neither shareholder may: (i) divert for its own benefit a corporate opportunity of the Network; (ii) compete with the Network; or (iii) solicit any payor of the Network to contract with a shareholder separately from the Network.

8.      Each shareholder must comply with SA 4 procedures to call to the other's attention any potential legal or practical impediment to continuation of the Network or the SA and thereafter to arbitrate any issues on those subjects.

9.      Each shareholder must take all actions and invest all resources reasonably necessary to ensure that the activities of the Network, HPI and Wellmont remain lawful, ethical, and clinically integrated.

10.     Neither shareholder may retaliate against any witness or member of HPI[3]: (i) for participation in this lawsuit; (ii) for testimony given in this lawsuit; (iii) for cooperation with counsel to provide information for this lawsuit; or (iv) in general for advancing the interests of the Network or HPI in this lawsuit.

HPI filed a motion for class certification contemporaneously with its verified complaint. HPI sought to certify a class of itself and each of its approximately 1,500 members. HPI alleged that its members pay "tithes" to HPI based on the payments made to those members under the contracts HPI negotiates with payors on behalf of the

---

[3]HPI alleges that most of the members of HPI and potential witnesses in this lawsuit have ongoing business dealings with Wellmont and that Wellmont should be enjoined from using their position as a major healthcare employer to intimidate witnesses and HPI members from cooperating in the prosecution of this suit.

members. Therefore, any actions by Wellmont that caused harm to HPI would necessarily harm its members, and vice versa.

Wellmont filed an unverified answer to the complaint on April 4, 2016. Later that month, Wellmont filed a motion in opposition to class certification. HPI's motion for class certification was heard on June 7, 2016, and August 31, 2016. At the hearing on June 7, 2016, the trial court heard the arguments of counsel for both sides but eventually agreed to give Wellmont time to take discovery on the issue of class certification. On August 31, 2016, the court again heard arguments from counsel regarding class certification and ordered the parties to participate in mediation to settle as many issues in the case as possible. At a status conference on February 24, 2017, the parties informed the court that the parties had been in direct communication without the aid of counsel and that the discovery process was still ongoing. On July 5, 2017, the court once again urged the parties to continue negotiations in an effort to resolve the case but stated that he would be ruling on HPI's motion for class certification within thirty days.

On July 27, 2017, the trial court granted HPI's motion, certifying the class of plaintiffs against Wellmont as: "All medical practitioners or practice groups who were members of Highland's Physician's Inc. for part or all of the period beginning June 22, 2012 through the date of this order." The court certified the class as to "all claims." The trial court found that the class satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23.01 of the Tennessee Rules of Civil Procedure. The trial court also concluded that HPI satisfied all three subparts of Rule 23.02 in order to maintain a class action. Further, the court held that HPI could proceed as a proper class representative on behalf of the class. Wellmont filed this interlocutory appeal regarding class certification.

## II. ISSUES PRESENTED

Wellmont presents the following issues for review on appeal:

1. Whether the trial court erred in certifying a class because HPI, a for profit corporation, does not have standing to assert claims for individualized damages against Wellmont on behalf of its shareholders, members, and independent medical practice groups?

2. Whether the trial court erred in certifying a class because HPI failed to establish the requirements for class certification under Tennessee Rule of Civil Procedure 23.01?

3. Whether the trial court erred in certifying a class because HPI failed

to establish the requirements for class certification under Tennessee Rule of Civil Procedure 23.02?

## III. STANDARD OF REVIEW

Pursuant to Tennessee Code Annotated section 27-1-125, the Court of Appeals

> shall hear appeals from orders of trial courts granting or denying class certification under Rule 23 of the Tennessee Rules of Civil Procedure, if a notice is filed within ten (10) days after entry of the order. All proceedings in the trial court shall be automatically stayed pending the appeal of the class certification ruling.

Tenn. Code Ann. § 27-1-125. Recently, this Court summarized the deferential standard of review that guides our analysis of a trial court's grant or denial of class certification:

> A trial court's decision on class certification is entitled to deference. *See Meighan v. U.S. Sprint Commc'ns Co.,* 924 S.W.2d 632, 637 (Tenn. 1996). The grant or denial of class certification is discretionary, and the court's decision will stand absent abuse of that discretion. *Id.* (citing *Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1197 (6th Cir. 1988)). The abuse of discretion standard typically applies when a choice exists in the trial court among several acceptable alternatives. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citing *Overstreet v. Shoney's, Inc.,* 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999)). Because the trial court is vested with the responsibility to make that choice, a reviewing court cannot second-guess the lower court's judgment or merely substitute an alternative it finds preferable. *Id.* at 524 (citations omitted). A reviewing court must instead affirm the discretionary decision so long as reasonable legal minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citing *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). The same principles apply here; a trial court's certification decision must stand if reasonable judicial minds can differ about the soundness of its conclusion. *Freeman v. Blue Ridge Paper Prod., Inc.*, 229 S.W.3d 694, 703 (Tenn. Ct. App. 2007) (citing *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)). "The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny." *Beecher*, 312 S.W.3d at 524 (citing *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002)).

6

A trial court's discretion is not unbounded. *Cf. Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). A trial court must consider controlling legal principles and relevant facts when making a discretionary decision. *Beecher*, 312 S.W.3d at 524 (citing *Konvalinka v. Chattanooga–Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). A trial court abuses its discretion if it (1) applies an incorrect legal standard, (2) reaches an illogical or unreasonable decision, or (3) bases its decision on a clearly erroneous evaluation of the evidence. *Elliott v. Cobb,* 320 S.W.3d 246, 249-50 (Tenn. 2010) (citation omitted); *see also Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301, 308 (Tenn. 2008) (citation omitted). Additionally, a trial court abuses its discretion if it "strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision." *Beecher*, 312 S.W.3d at 524 (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)).

Appellate courts review a trial court's discretionary decision to determine "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Id.* at 524-25 (citing *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008)). We review the trial court's legal conclusions *de novo* with no presumption of correctness. *Id.* at 525 (citing *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 212 (Tenn. Ct. App. 2002)). We review the trial court's factual conclusions under the preponderance of the evidence standard. *Id.* (citations omitted).

*Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 528 S.W.3d 524, 537-38 (Tenn. Ct. App. 2017), *perm. app. denied* (Tenn. Aug. 18, 2017) (quoting *Roberts v. McNeill*, No. W2010-01000-COA-R9-CV, 2011 WL 662648, at *3-5 (Tenn. Ct. App. Feb. 23, 2011)).

## IV.    Discussion

Class action lawsuits are procedural vehicles that allow a representative party to prosecute or defend an action on behalf of himself and the class. *See generally*, Tenn. R. Civ. P. Rule 23. The goals of class action lawsuits include the promotion of efficiency, judicial economy, protection of defendants from inconsistent obligations, protection of the interests of absentee plaintiffs, and generally creating a convenient and economical

7

way to adjudicate similar lawsuits. *Meighan v. U.S. Sprint Commc'ns Co.,* 924 S.W.2d 632, 637 (Tenn. 1996). However, class actions are "'exception[s] to the usual rule that litigation is [to be] conducted by and on behalf of the individual named parties only.'" *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). There is no absolute right to class action status in Tennessee, but it may be granted in the sound discretion of the trial court. *Crouch v. Bridge Terminal Transp., Inc.*, No. M2001-00789-COA-R3-CV at *2 (Tenn. Ct. App. Apr. 30, 2002), *perm. app. denied* (Tenn. Sept. 16, 2002). We have discussed the law relevant to this decision by the trial court as follows:

> Rule 23 of the Tennessee Rules of Civil Procedure governs class action certification. *Walker*, 249 S.W.3d at 307 (citing *Hamilton v. Gibson Cnty. Util. Dist.*, 845 S.W.2d 218, 225 (Tenn. Ct. App. 1992)). The burden is on the proponent of class certification to demonstrate that a class action is appropriate. *Id.* This burden is two-fold. The proponent must first satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23.01. *Id.* at 307-08 (citing Tenn. R. Civ. P. 23.01). Rule 23.01 permits class certification if
>
> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.
>
> Tenn. R. Civ. P. 23.01. The proponent of class certification must demonstrate compliance with each of Rule 23.01's requirements. *Walker*, 249 S.W.3d at 307-08.
>
> The proponent must next establish the class action is maintainable under Rule 23.02. *Id.* at 308. In contrast to Rule 23.01, the proponent of class certification must establish only one Rule 23.02 basis for the maintenance of a class action. *Id.* Rule 23.02 provides three bases for class action certification:
>
> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interest; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the question of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.

Tenn. R. Civ. P. 23.02. Class certification is permissible only if the proponent demonstrates compliance with both Rule 23.01 and Rule 23.02. *Freeman*, 229 S.W.3d at 702 (citing *Hamilton*, 845 S.W.2d at 225).

*Wofford*, 528 S.W.3d at 537-38.

When making a determination regarding whether to certify a class, a trial court must undertake a "rigorous analysis" of the aforementioned requirements of Rule 23. *Id.* at 538-40. In this case, the trial court's order states that the court conducted a rigorous analysis to determine that all of the requirements for class certification were satisfied. Specifically, the court considered "the submissions of the parties including evidence in the form of the filings to date, including such documents as the verified complaint, answers to discovery, the Rule 30.02(6) deposition of HPI's executive director Brant Kelch, and certain documents produced by the parties." Additionally, the court heard the matter over the course of two days and issued a written order detailing its findings and conclusions, ultimately concluding that the requirements of Rule 23 had been satisfied.

1.     **Standing**

9

As an initial issue, Wellmont asserts that the trial court erred in certifying the class "because HPI, a for profit corporation, does not have standing to assert claims for individualized damages against Wellmont on behalf of its shareholders, members, and independent medical practice groups." Wellmont continuously asserts that HPI cannot represent the class because the proposed class is comprised of HPI's own members/shareholders. Any argument that HPI is suing for the individualized damages to its members appears to be a misinterpretation of the verified complaint. Wellmont cites to cases such as *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714-15 (2d Cir. 2004) for the proposition that corporations and associations do not have standing to assert claims for individualized damages on behalf of their members. However, the facts in *Bano* are distinguishable from the case at bar in that the organization was attempting to pursue the claims of its members without being a member of the class itself. *Id.* The *Bano* court noted that where the involvement of individual members of an organization is necessary, "the standing of an association is limited to bringing claims arising out of injuries that the organization, not simply its members, suffered." *Id.* That is precisely what HPI is seeking to recover in the case at bar. HPI's prayer for relief is for the recovery of damages caused to the organization itself, and it seeks to be named class representative for other individuals that will be recovering individualized damages that Wellmont allegedly caused to them. In sum, HPI, as a member of the class itself and claiming its own damages against Wellmont, has standing to act as a class representative. *See United States v. City of New York*, 258 F.R.D. 47, 67 (E.D.N.Y. 2009) (allowing an organizational plaintiff that suffered similar injuries to individual class members to serve as class representative for a portion of the claims brought).

Furthermore, it is Wellmont's position that the members of HPI do not have individualized damages against Wellmont because the SA does not specify HPI's members/shareholders as being third party beneficiaries to the SA. Whether HPI's members/shareholders are in fact third party beneficiaries to the SA is one of the common questions that will need to be resolved on the merits by the trial court. We decline to address the merits of this issue on an interlocutory appeal from the certification of a class.

## 2.      **Tennessee Rule of Civil Procedure 23.01**

Rule 23.01 of the Tennessee Rules of Civil Procedure requires compliance with each of Rule 23.01's four (4) requirements as prerequisites to a class action lawsuit:

(1) The class is so <u>numerous</u> that joinder of all members is impracticable,

(2)  There are questions of law or fact <u>common</u> to the class,

10

(3) The claims or defenses of the representative parties are <u>typical</u> of the claims or defenses of the class, and

(4) The representative parties will fairly and <u>adequately</u> <u>protect</u> the interest of the class.

*See* Tenn. R. Civ. P. 23.01 (emphasis added). These requirements are commonly referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Wellmont does not dispute that HPI has demonstrated compliance with the first and second elements of Rule 23.01 – numerosity and commonality. Wellmont does, however, allege that the trial court erred in finding that the elements of typicality and adequacy of representation had been proven.

A.    <u>Typicality</u>

Wellmont alleges that the trial court erred in finding that HPI met its burden of proving that the "claims or defenses of the representative parties [HPI] are typical of the claims or defenses of the class." "'[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Freeman v. Blue Ridge Paper Prods., Inc.*, 229 S.W.3d 694, 703 (Tenn. Ct. App. Jan. 25 2007) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).

With respect to typicality, the court found as follows:

HPI's primary source of revenue is today, and has been since its inception in 1993, "tithes" received from its members. HPI receives a percentage of receipts of member payments under agreements negotiated by HPI and the Highlands Wellmont Health Network. Verified Complaint ¶ 72; Eden Decl. ¶¶ 2–4; Kelch Decl. ¶¶ 3–5. To prove its own case, HPI must thus also prove its members' cases. HPI's claim therefore "arises from the same . . . . course of conduct" as the other class members' claims, which satisfies the typicality requirement. *Freeman*, 229 S.W.3d at 703.

HPI is seeking relief in this case based on the same legal theories and conduct as the class. Wellmont's course of conduct as it relates to the allegedly antagonistic behavior toward HPI and the diversion of payor contracts forms the basis of the claims of HPI and all of its class members. Further, any injury to the members of HPI is also an injury to HPI itself. As a result, even if HPI were the only plaintiff in this lawsuit, HPI would have to prove the damages of each of its individual members in order to calculate their two and one half percent tithe that they receive from their members. Wellmont also

11

argues that the payment system is not as simple as the flow-through tithing process that HPI describes. However, Wellmont has made no persuasive argument to the contrary.

In its reply brief, Wellmont again addresses HPI's corporate structure as preventing not only standing, but also a finding of typicality between HPI and its shareholders. According to Wellmont, "[t]o have the ability to bring direct claims of the shareholders, HPI would have to establish, among other things, that the shareholders' claims and HPI's claims are distinct and not reliant on evidence of injury to the other." We reiterate our analysis of HPI's standing in this matter set forth in Section C above. HPI and its members are all claiming individualized injuries flowing from Wellmont's conduct. We affirm the trial court's finding of typicality.

B.     Adequacy of Representation

In addition to proving that HPI's claims are typical claims, HPI must also prove that, as a putative class representative, it will adequately represent the interests of the class. Pursuant to Rule 23.01(4), the proposed class representative "must have common interests with the unnamed class members and it must appear that the class representatives will vigorously prosecute the case and protect the interests of the class through qualified counsel." *Wofford,* 528 S.W.3d at 537-38.

In finding that HPI satisfies the requirements of Tennessee Rule of Civil Procedure 23.01(4), the trial court noted the following:

a. HPI exists primarily to advance its members' interest. Verified Complaint ¶ 73(a); HPI 30.02(6) Witness Dep. Tr. at 97–98. HPI was formed for the purpose of negotiating contracts like the Stockholders' Agreement at issue in this case, and representing the members' interest in dealings with hospitals like Wellmont. Verified Complaint ¶ 72 & Ex. 3 at 3–4; HPI 30.02(6) Witness Dep. Tr. at 116–19.

b. As HPI's Executive Director testified, "HPI wasn't put together for HPI to become a big, successful company. It was put together to basically represent the interests of the doctors in collaboration with Wellmont." HPI 30.02(6) Witness Dep. Tr. at 119. If HPI makes more than $50,000/year in net income, it returns the surplus to its members. HPI 30.02(6) Witness Dep. Tr. at 97–98.

c. HPI is governed by a Board of Directors elected by its shareholders. Verified Complaint ¶ 73(a). The Board of Directors has chosen a Special Litigation Committee of three directors to make decisions about

this case. Verified Complaint ¶ 73(b). The Special Litigation Committee has provided updates to the Board of Directors and HPI's members about this litigation. HPI 30.02(6) Witness Dep. Tr. 124–125, 128.

d. Wellmont does not dispute that HPI is represented in this case by counsel who are experienced and competent in the prosecution of complex class action litigation, as well as in the other issues relevant to this dispute. Verified Complaint ¶¶ 73(e)–(f) . . . .

Wellmont asserts that HPI is not an adequate representative for the proposed class because the organization's interests are divergent and antagonistic to some class members. In general, Wellmont points to the fact that some of HPI's members are employed by subsidiaries of Wellmont, and Wellmont assumes that these members would "obviously" not want to harm the parent company of their employer, i.e., Wellmont. Wellmont, however, does not point to anything in the record on appeal to support this statement. The most basic function of HPI as an organization is to promote the interests of its members. We conclude that the record supports the trial court's findings above and the determination that HPI is an appropriate class representative.

## 3. **Tennessee Rule of Civil Procedure 23.02**

After the proponent of class certification demonstrates compliance with each of Rule 23.01's requirements, the proponent must next establish the class action is maintainable under Rule 23.02. *Walker*, 249 S.W.3d at 308. In contrast to Rule 23.01, the proponent of class certification must establish only one Rule 23.02 basis for the maintenance of a class action. *Id.* The trial court held that HPI actually satisfied each of the three bases under 23.02.

A.     Tennessee Rules of Civil Procedure Rule 23.02(1)

Rule 23.02(1) allows for a class action lawsuit when:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interest.

With respect to this basis for maintaining a class action, the trial court found as follows:

> The prosecution of individual actions by individual members of the class would create a risk of inconsistent or varying adjudications, and would effectively be dispositive of the interest of other individual members. Tenn. R. Civ. Proc. 23.02(1). HPI has pled claims the disposition of which could, as a practical matter, be dispositive of its individual members' claims. These claims should be decided on a class basis.

Regarding subsection (a) of Rule 23.01, the trial court found that the prosecution of individual actions by individual members of the class would create the risk of "inconsistent or varying adjudications." However, the full reading of subsection (a) requires not only the risk of inconsistent results, but that those results must also risk establishing "incompatible standards of conduct" for the party opposing the class, which in this case is Wellmont. *See* Tenn. R. Civ. P. 23.02(1)(a). This requirement has been explained as follows:

> [C]ase law has established that Rule 23(b)(1)(A) does not include a situation in which the risk of inconsistent results in a series of individual actions would only mean that the nonclass party might prevail in some cases and not in others, and therefore have to pay damages to some claimants but not to others. *See, e.g., Bogosian v. Gulf Oil Corporation,* 62 F.R.D. 124 (E.D.Pa.1973); *Walker v. Houston,* 341 F. Supp. 1124, 1131 (S.D.Tex.1971); 3B *Moore's Federal Practice* ¶ 23.35[1] at 23–272 (1985). The advisory committee notes make it clear that the situation in which a party is faced with inconsistent results requiring it to pay some class members but not others is covered by Rule 23(b)(3) not Rule 23(b)(1). *See* Advisory Committee Note of 1966 to Rule 23(b)(3). The risk of "incompatible standards of conduct" which Rule 23(b)(1)(A) was designed to protect against involves situations where the non-class party does not know, because of inconsistent adjudications, whether or not it is legally permissible for it to pursue a certain course of conduct. Thus, Rule 23(b)(1)(A) is designed to protect against the nonclass party's being placed in a stalemated or conflicted position and is applicable only to actions in which there is not only a risk of inconsistent adjudications but also where

14

the nonclass party could be sued for *different and incompatible affirmative relief. Abramovitz v. Ahern,* 96 F.R.D. 208, 215 (D. Conn. 1982) (emphasis added).

*Employers Ins. of Wausau v. Fed. Deposit Ins. Corp.*, 112 F.R.D. 52, 54-55 (E.D. Tenn. 1986). In this case, HPI seeks a declaration that Wellmont breached the SA and an injunction to prohibit Wellmont from acting contrary to the SA in the future. HPI has not sufficiently shown that these declarations and injunctions, even if asserted by various individuals outside of the class action context, create the risk of Wellmont being sued for different and incompatible affirmative relief as is discussed in *Abramovitz, 96 F.R.D.* at 215, above. *See Bohlinger v. Am. Credit Co.*, 594 S.W.2d 710, 712 (Tenn. Ct. App. Oct. 1979 ("A party invoking T.R.C.P., Rule 23, has the burden of showing all the prerequisites to utilize the class action procedure have been satisfied . . . ."). The trial court's order in this case, which more or less recites the wording of Rule 23.02(2)(a), is no more enlightening. HPI has maintained throughout this case that HPI and its members share common interests that are not divergent from one another. HPI has not met its burden of showing that the affirmative relief sought in its verified complaint supplies a basis for class certification under Rule 23.02(2)(a).

With respect to subsection (b) of Rule 23.02(1), the trial court found that "HPI has pled claims the disposition of which could, as a practical matter, be dispositive of its individual members' claims. These claims should be decided on a class basis." Again, the trial court did not elaborate on what claims could be dispositive of individual members' claims. HPI asserts that "to avoid giving Wellmont inconsistent obligations, a court could bind HPI's members to an adverse ruling on such issues." We find this argument to be speculative and unpersuasive. As noted above, HPI has not shown that there is a substantial risk that any of the declaratory or injunctive relief sought by HPI would infringe upon the rights of its individual members. Furthermore, HPI has not claimed that the relief it seeks against Wellmont might deplete Wellmont's resources or otherwise impair others' rights to pursue and collect their own judgments against Wellmont. Therefore, we reverse the trial court's finding that certification is appropriate under Rule 23.02(1)(b).

B.      Tennessee Rules of Civil Procedure Rule 23.02(2):

Rule 23.02(2) creates a second type of class action when the following requirement is met:

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class

as a whole

With respect to this basis for maintaining a class action, the trial court found that "HPI seeks declaratory and injunctive rulings that will apply classwide. Tenn. R. Civ. Proc. 23.02(2). These issues should be decided on a class basis since their disposition necessarily affects all class members." Although subsection (2) is similar to subsection (1), subsection (2) does not contain the more demanding requirement that individual actions would create a risk of incompatible standards of conduct or negatively impact other class members. In Section I, infra, we set forth HPI's prayers for injunctive and/or declaratory relief sought, some of which apply to the entire class, and all of which stem from the same conduct by Wellmont.

Wellmont argues that certification under Rule 23.02(2) is not proper because the primary relief sought by HPI and its class members is not injunctive or declaratory in nature. Indeed, the Tennessee Supreme Court has explained that "[w]hile [Rule 23.02(2) may also apply in cases seeking monetary relief, [monetary] relief must be 'secondary or ancillary to the predominant injunctive or declarative relief sought.'" *Meighan v. U.S. Sprint Commc'ns. Co.*, 924 S.W.2d 632, 636 (Tenn. 1996) (*quoting* H. Newberg, *Newberg on Class Actions*, § 4.12, at 294 (2d ed. 1985)). *See also* Fed. R. Civ. P. 23 advisory committee note (1996) ("subdivision [2] does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages."). HPI's verified complaint seeks declaratory, injunctive, and monetary relief. After review of the entire record on appeal, which is sparse due to the early stage of this litigation, we cannot conclude that the primary relief sought by HPI in this matter is not injunctive or declaratory in nature.

We do recognize that reasonable minds could differ as to the propriety of the decision to certify a class under Rule 23.02(2). But under such circumstances, the abuse of discretion standard of review dictates that the decision of the trial court be affirmed. *See, Roberts v. McNeill*, No. W2010-01000-COA-R9-CV, 2011 WL 662648, at *3-5 (Tenn. Ct. App. Feb. 23, 2011) (citing *Freeman v. Blue Ridge Paper Prod., Inc.*, 229 S.W.3d 694, 703 (Tenn. Ct. App. 2007). ("[A] trial court's certification decision must stand if reasonable judicial minds can differ about the soundness of its conclusion.").

C.    Tennessee Rules of Civil Procedure Rule 23.02(3):

The third type of class action set forth in Rule 23.02 is permitted when:

(3) the court finds that the question of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for

16

the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.

Tenn. R. Civ. P. 23.02(3).

With respect to this basis for maintaining a class action, the trial court found the following:

> Most important, however, the requirements of Tenn. Rule of Civ. Proc. 23.02(3) also are satisfied and should be followed in future proceedings. The many common questions listed above predominate over individual issues, which are largely restricted to damages. "Where the defendant's liability can be determined on a class-wide basis because the cause of the [injury] is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy." *Freeman*, 229 S.W.3d at 706 (certifying class under Rule 23.02(3) where liability could be determined classwide, even though damages varied among class members).

Wellmont argues that individualized proof to assess damages of the purported class should preclude a finding of predominance. We disagree. "If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined . . . the fact that damages are not identical across all class members should not preclude class certification." *Butler v. Sears Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). Moreover, damages pursued by HPI are common to the entire class. Therefore, even if HPI were the only plaintiff in this case, it would still require proof of the damages incurred by its members in order to calculate HPI's damages.

Further, we agree with the trial court and HPI that a class action trial would be superior to other methods available for adjudicating the claims at issue in this case. Individual actions are not a reasonable alternative. We cannot see how it would be preferable to have potentially hundreds of cases with different judges in different courts dealing with these same legal and factual issues. In such a scenario, there is clearly the possibility of different results, with different plaintiffs being treated differently and different obligations for Wellmont. We discern no error in the trial court's decision that a

single class action lawsuit heard by one judge resolving the issues once and for all for everyone is the best course of action.

The evidence does not preponderate against the trial court's finding that the class would be manageable. In this particular case, the claimants are all known and ascertainable – about 1,500 physicians/members of HPI. Further, there is an organization, HPI, already in place that represents the interests of all potential class members. HPI also has the ability to communicate with all potential class members and the resources and counsel secured to prosecute the case.

Finally, we find it prudent to address the proverbial "floodgates" argument that pervades Wellmont's filings and oral argument on appeal. Wellmont claims that HPI "seeks to fundamentally change Tennessee jurisprudence and greatly expand class action litigation by creating a rule of law which will allow a corporation in dispute with another corporation to create causes of action for its individual shareholders and to act as their class representative." We disagree. Nothing in this Opinion should be construed as setting forth a general rule allowing shareholders of a corporation to automatically become additional plaintiffs when the corporation initiates litigation. Such a reading of this Opinion would ignore the particularized facts of this case, specifically that the members/shareholders of the corporation at issue, HPI, claim individualized damages against Wellmont in addition to the damages to HPI as an organization itself by virtue of the unique payment structure between HPI, its shareholders, and Wellmont. The determination of whether to certify a class pursuant to Rule 23 in this case, as in any other, depends on the particular facts, law, claims, and defenses involved. Our review of the trial court's analysis of those issues in this case pursuant to Rule 23 substantiates the trial court's certification of the class under subsections (2) and (3) of Rule 23.02.

## IV. Conclusion

For the foregoing reasons, we reverse the order of the trial court granting class certification pursuant to Rule 23.02(1). We affirm the remainder of the trial court's order granting class certification and remand for further proceedings. Costs of this appeal are to appellant, Wellmont Health System, and its surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE