# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
June 10, 2020 Session

## TINA ROGERS ET AL. v. ADVENTURE HOUSE LLC ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 18C921          John B. Bennett, Judge**

_____

### No. E2019-01422-COA-R3-CV
_____

This negligence action arose from approximately 102 events of food poisoning or illness purportedly related to numerous patrons (collectively, "Plaintiffs") who dined at or visited Adventure House, LLC d/b/a River Drifters Restaurant and River Drifters Adventure Center ("the Restaurant"), located on real property owned by Robert L. Newman ("the Premises"). Plaintiffs filed suit against the Restaurant; Mr. Newman; and Charles and Renee Eich, the owners of the Restaurant. Upon Plaintiffs' motion to certify the action as a class action, the Hamilton County Circuit Court ("trial court") denied Plaintiffs' motion upon a determination that Plaintiffs had failed to carry their burden to prove the commonality, typicality, and adequacy of representation elements required by Tennessee Rule of Civil Procedure 23.01. The trial court further determined that if those elements were met, the class could maintain its certification pursuant to Tennessee Rule of Civil Procedure 23.02(1)(b). However, based on its determination that the class did not satisfy the threshold certification requirements under Rule 23.01, the trial court denied Plaintiffs' motion to certify the litigation as a class action. Plaintiffs have appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J. joined.

Everett L. Hixson, Jr.; Christopher T. Varner; and Everett L. Hixson, III, Chattanooga, Tennessee, for the appellants, M.E. Pearson, Timothy Hargiss, Joan Broome, Tina Rogers, Eric Rogers, David Broome, Barry Condra, Amanda Hargiss, Perry Hixson, Stacye Hixson, J.M. Pearson, Britt Self, and Timothy Barnett.

Ronald D. Wells, Stacy Lynn Archer, and Philip Aaron Wells, Chattanooga, Tennessee, for the appellees, Adventure House LLC d/b/a River Drifters Restaurant and River Drifters Adventure Center.

N. Mark Kinsman and Matthew R. Courtner, Hixson, Tennessee, for the appellee, Robert L. Newman.

**OPINION**

I. Factual and Procedural Background

Tina Rogers filed a complaint in the trial court on August 15, 2018, naming as defendants the Restaurant, Mr. Newman, and the Eichs (collectively, "Defendants"), after becoming ill subsequent to dining at the Restaurant on August 4, 2018. Ms. Rogers averred, *inter alia*, that the Restaurant made use of a contaminated private well, as opposed to a public water source, as its source for providing drinking water to its customers and that as a result of drinking the well water, Ms. Rogers became ill, was hospitalized, incurred medical expenses, and had been out of work since the incident. Ms. Rogers further alleged that (1) Defendants created a dangerous and defective condition that caused her to suffer injuries; (2) Defendants had a duty not to create or utilize a dangerous and defective condition on the Premises; (3) it was foreseeable that Defendants' invitees, including Ms. Rogers, would be injured if they consumed the contaminated water; and (4) Ms. Rogers suffered serious and debilitating injuries when she consumed the contaminated water. Ms. Rogers argued that Defendants were negligent when they served contaminated water to their invitees and that such negligence was the proximate and legal cause of Ms. Rogers's injuries. In addition, Ms. Rogers alleged that there were other injured patrons who were dining at the Restaurant who had experienced similar symptoms after they had also consumed the well water.

Prior to the filing of Defendants' respective answers, Ms. Rogers amended her complaint on August 24, 2018, to add several plaintiffs to the action. In the amended complaint, Plaintiffs alleged that Defendants were liable under the theories of negligence and negligence *per se*. Plaintiffs further sought class action certification, pursuant to Tennessee Rule of Civil Procedure 23, and included additional "class allegations." On November 19, 2018, the Restaurant and the Eichs collectively filed an answer to Plaintiffs' complaint, wherein they denied liability and further contested Plaintiffs' eligibility for class certification, pursuant to Rule 23, and demanded a jury trial. Mr. Newman filed a separate answer to Plaintiffs' complaint on December 7, 2018, denying liability and contesting Plaintiffs' eligibility for class action certification.

On December 14, 2018, Plaintiffs issued subpoenas to the Chattanooga-Hamilton County Health Department ("the County Health Department") and the Tennessee Department of Environment and Conservation, Division of Water Resources ("TDEC")

(collectively, "the Departments"), wherein Plaintiffs requested, *inter alia*, the Departments' files related to any investigation of the Restaurant and any correspondence between the Departments and the Restaurant, the Eichs, or Mr. Newman. By agreement of the parties, the trial court entered an order on January 4, 2019, dismissing the Eichs in their individual capacities.

Plaintiffs subsequently filed a motion to amend on January 11, 2019, wherein they sought leave to file a second amended complaint to include additional facts related to Plaintiffs' illnesses and to add the theory of *res ipsa loquitur*. Specifically, Plaintiffs claimed that during the relevant time period, the Restaurant did not prevent its employees from working while they were symptomatic with illnesses, contributing to Plaintiffs' injuries and damages.

On January 31, 2019, Plaintiffs filed a motion to certify a class action, wherein they sought permission to represent a putative class of similarly situated persons. Plaintiffs claimed, *inter alia*, that the proposed class of persons satisfied the requirements of Rule 23.01 because the class would consist of over one hundred individuals, questions of law or fact common to the class existed, and Plaintiffs' claims were typical of the proposed class's claims in that all persons dined at the Restaurant. Plaintiffs further claimed that they would fairly and adequately protect the interests of the proposed class. Finally, Plaintiffs asserted that a class action would be appropriate, pursuant to Rule 23.02(1)(a) and Rule 23.02(3), for the following reasons: (1) the filing of separate lawsuits could create a risk of inconsistent or varying outcomes; (2) questions of fact or law common to the proposed class would predominate over questions affecting only individual class members; and (3) a class action would be superior to other available methods for fair adjudication of the controversy. Concerning Plaintiffs' motion to certify the case as a class action, the trial court subsequently set a hearing for May 16, 2019.

Meanwhile, the trial court entered an order allowing Plaintiffs to file a second amended complaint, which Plaintiffs subsequently filed on February 20, 2019. Mr. Newman filed an answer to Plaintiffs' second amended complaint on March 5, 2019, denying any liability for Plaintiffs' injuries and averring that if the private well had been contaminated, its contaminated status was the fault of James Mills Well Drilling, Inc. ("the Drilling Company"), which had recently performed service on the well. Mr. Newman additionally contended that Plaintiffs' proposed class should not be certified pursuant to Rule 23. Following competing motions to compel discovery filed by Plaintiffs and Mr. Newman, the trial court entered an agreed order granting Plaintiffs' motion to compel and directing that the Restaurant answer Plaintiffs' discovery requests.

In its answer to Plaintiffs' second amended complaint, the Restaurant opposed class certification and asserted that the amended complaint failed to state a claim upon which relief could be granted. The Restaurant reiterated its opposition to Plaintiffs' proposed class certification via its April 30, 2019 response to Plaintiffs' motion to certify a class

- 3 -

action, wherein the Restaurant posited that Plaintiffs had not met their burden under Rules 23.01 and 23.02. As an exhibit to its response, the Restaurant attached the County Health Department's investigative report concerning the gastrointestinal illnesses reported at the Restaurant. In its report, the County Health Department concluded that "[t]here were likely various modes of transmission in this outbreak including person-to-person, fomite, foodborne and waterborne."

On May 2, 2019, Plaintiffs issued a subpoena requesting the production of documentary evidence from the Drilling Company. Mr. Newman filed his response objecting to Plaintiffs' motion to certify a class action on May 6, 2019.

On June 19 and 20, 2019, the trial court conducted a hearing concerning Plaintiffs' motion for class certification. At the conclusion of the hearing, the trial court requested that counsel submit post-hearing briefs. The trial court held a hearing on July 11, 2019, to issue its ruling. Thereupon, the trial court announced that Plaintiffs had not satisfied their burden to certify a class action under Rule 23.01, specifically determining that three of the four elements of Rule 23.01–commonality, typicality, and adequacy of representation–had not been satisfied. The court further indicated that it would issue its ruling in the form of a subsequent written order.

On July 25, 2019, Plaintiffs filed a motion to amend their second amended complaint by, *inter alia*, naming three additional plaintiffs, adding a claim for punitive damages, and modifying the class definition. On July 31, 2019, Defendants each filed responses to Plaintiffs' motion to amend, respectively asserting that Plaintiffs' motion was futile by reason of the trial judge's adverse oral ruling at the July 11, 2019 hearing.

The trial court entered an order on July 31, 2019, denying class action certification. The trial court expressly adopted Plaintiffs' class definition as defined in the second amended complaint. Employing such definition, the trial court determined that Plaintiffs had not satisfied their burden concerning the commonality, typicality, and adequacy of representation elements of Rule 23.01. Notwithstanding this determination, the trial court also found that if Plaintiffs had satisfied the requirements of Rule 23.01, the proposed class would be maintainable because the requirements of Rule 23.02 were satisfied. However, because Plaintiffs failed to carry their burden under Rule 23.01, the trial court denied Plaintiffs' motion to certify a class action.

The trial court subsequently entered an order on August 6, 2019, granting Plaintiffs' motion to amend their second amended complaint and allowing the punitive damages claim. The court reserved ruling on the proposed modified class definition until an appeal, if any, of the trial court's order denying class certification. Per the trial court's order, Plaintiffs filed a third amended complaint on August 8, 2019. Plaintiffs timely sought interlocutory review in this Court pursuant to Tennessee Code Annotated § 27-1-125 (2017).

## II. Issues Presented

Plaintiffs have raised the following two issues on appeal, which we have reordered and restated slightly as follows:

1. Whether the trial court erred by failing to certify the proposed class as a class action under the modified class definition proposed by Plaintiffs in their post-hearing brief.

2. Whether the trial court erred by denying Plaintiffs' motion to certify the proposed class pursuant to Tennessee Rule of Civil Procedure 23.01.

The Restaurant presents one additional issue on appeal, which we have likewise restated as follows:

3. Whether the trial court erred by determining that the case would be maintainable as a class action, pursuant to Tennessee Rule of Civil Procedure 23.02(1)(b), if Plaintiffs had satisfied the requirements of Rule 23.01.

## III. Standard of Review

Tennessee Code Annotated § 27-1-125 vests this Court with the authority to "hear appeals from orders of trial courts granting or denying class certification" under Tennessee Rule of Civil Procedure 23. Concerning the standard of review for class action certifications, this Court has previously elucidated:

> A trial court's decision on class certification is entitled to deference. *See Meighan v. U.S. Sprint Commc'ns Co.,* 924 S.W.2d 632, 637 (Tenn. 1996). The grant or denial of class certification is discretionary, and the court's decision will stand absent abuse of that discretion. *Id.* (citing *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)). The abuse of discretion standard typically applies when a choice exists in the trial court among several acceptable alternatives. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citing *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999)). Because the trial court is vested with the responsibility to make that choice, a reviewing court cannot second-guess the lower court's judgment or merely substitute an alternative it finds preferable. *Id.* at 524 (citations omitted). A reviewing court must instead affirm the discretionary decision so long as reasonable legal minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citing

*State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). The same principles apply here; a trial court's certification decision must stand if reasonable judicial minds can differ about the soundness of its conclusion. *Freeman v. Blue Ridge Paper Prod., Inc.*, 229 S.W.3d 694, 703 (Tenn. Ct. App. 2007) (citing *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)). "The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny." *Beecher*, 312 S.W.3d at 524 (citing *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002)).

A trial court's discretion is not unbounded. *Cf. Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). A trial court must consider controlling legal principles and relevant facts when making a discretionary decision. *Beecher*, 312 S.W.3d at 524 (citing *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). A trial court abuses its discretion if it (1) applies an incorrect legal standard, (2) reaches an illogical or unreasonable decision, or (3) bases its decision on a clearly erroneous evaluation of the evidence. *Elliott v. Cobb,* 320 S.W.3d 246, 249-50 (Tenn. 2010) (citation omitted); *see also Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 308 (Tenn. 2008) (citation omitted). Additionally, a trial court abuses its discretion if it "strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision." *Beecher*, 312 S.W.3d at 524 (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)).

Appellate courts review a trial court's discretionary decision to determine "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Id.* at 524-25 (citing *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008)). We review the trial court's legal conclusions *de novo* with no presumption of correctness. *Id.* at 525 (citing *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 212 (Tenn. Ct. App. 2002)). We review the trial court's factual conclusions under the preponderance of the evidence standard. *Id.* (citations omitted).

* * *

Rule 23 of the Tennessee Rules of Civil Procedure governs class action certification. *Walker*, 249 S.W.3d at 307 (citing *Hamilton v. Gibson Cnty. Util. Dist.*, 845 S.W.2d 218, 225 (Tenn. Ct. App. 1992)). The burden is on the proponent of class certification to demonstrate that a class action is appropriate. *Id.* This burden is two-fold. The proponent must first satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23.01. *Id.* at 307-08 (citing Tenn. R. Civ. P. 23.01). Rule 23.01 permits class certification if

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Tenn. R. Civ. P. 23.01. The proponent of class certification must demonstrate compliance with each of Rule 23.01's requirements. *Walker*, 249 S.W.3d at 307-08.

The proponent must next establish the class action is maintainable under Rule 23.02. *Id.* at 308. In contrast to Rule 23.01, the proponent of class certification must establish only one Rule 23.02 basis for the maintenance of a class action. *Id.* Rule 23.02 provides three bases for class action certification:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> > (a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> >
> > (b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interest; or
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby

> > making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> > (3)     the court finds that the question of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:  (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.
>
> > Tenn. R. Civ. P. 23.02.  Class certification is permissible only if the proponent demonstrates compliance with both Rule 23.01 and Rule 23.02.  *Freeman*, 229 S.W.3d at 702 (citing *Hamilton*, 845 S.W.2d at 225).
>
> *Roberts v. McNeill*, No. W2010-01000-COA-R9-CV, 2011 WL 662648, at *3-5 (Tenn. Ct. App. Feb. 23, 2011).

*Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 528 S.W.3d 524, 537-39 (Tenn. Ct. App. 2017).

Furthermore, this Court has explained that it is necessary to conduct a "rigorous analysis" when reviewing a class certification, stating:

> The trial court has the responsibility to conduct its own inquiry into whether the requirements of Rule 23 have been met.  *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003).  In this case, that means an evaluation of whether common questions of law or fact predominate over individual questions and whether class action provides the superior method of resolving the claims.

> The extent and components of a thorough or rigorous analysis necessary for a class certification decision depend upon the claims and defenses presented, the type of class certification requested, the issues raised

regarding the compliance with the rule's requirements, the members of the purported class, and other questions presented by the particular case and the requirements of Rule 23. The trial court must "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano v. Am. Tobacco Co.*, 84 F.3d [734,] 744 [(5th Cir. 1996)]; *see also Carroll v. Cellco Partnership*, 313 N.J. Super. 488, 713 A.2d 509, 512 (1998).

\* \* \*

Where the trial court fails to look beyond the pleadings and conduct a rigorous analysis of the issues, the case must be remanded to permit the trial court to make that analysis and to make the findings required by Rule 23. *Geriarty v. Grant Thornton, LLP*, 368 F.3d 356, 367 (4th Cir. 2004) (the trial court indicated it was relying on plaintiff's assertions regarding the factual issue of the efficiency of the market which triggered the presumption of reliance).

*Wofford*, 528 S.W.3d at 539-40.

## IV. Plaintiffs' Proposed Class Definition

As a threshold matter, we address Plaintiffs' issue of whether the trial court erred by not considering Plaintiffs' modified class definition as postulated in their post-hearing brief. Mr. Newman argues that Plaintiffs waived their right to rely upon the modified class definition in their post-hearing brief because Plaintiffs did not timely present this definition before the trial court. In support of his argument, Mr. Newman relies in part on two cases, *In re M.L.P.*, 281 S.W.3d 387 (Tenn. 2009), and *City of Memphis v. Shelby Cty.*, 469 S.W.3d 531 (Tenn. Ct. App. 2015).

In *M.L.P.*, when the parties appeared at a hearing during which the court was to render an oral ruling, the father argued for the first time that the statute under which his parental rights had been terminated was unconstitutional. *See In re M.L.P.*, 281 S.W.3d at 393. Our Supreme Court held that the father untimely raised this issue and, as a result, had waived it, determining:

We have stated that "[a] conclusory contention that a statute is unconstitutional, raised for the first time in closing argument . . . does not present an attractive issue for appellate review." In addition, Father's challenge was "late-raised [and] minimally addressed." Because Father did not properly raise this issue in the trial court, he has waived his right to argue this issue for the first time on appeal.

- 9 -

*Id*. at 394. Likewise, in *City of Memphis*, this Court concluded that based on the High Court's ruling in *M.L.P.*, the City of Memphis waived its constitutional challenge to a statutory amendment because the city addressed the issue for the first time in a trial memorandum submitted on the eve of the trial. *See City of Memphis*, 469 S.W.3d at 561.

We discern these cases to be distinguishable from the case at bar. In both *M.L.P.* and *City of Memphis*, the litigants challenged the constitutionality of a statute, a distinction that is significant because Tennessee Code Annotated § 29-14-107(b) (2012) requires that a litigant provide notice to the Tennessee Attorney General prior to said litigant's constitutional challenge of a statute. In the case at bar, Plaintiffs are not questioning the constitutionality of a statute. Furthermore, in *M.L.P.* and *City of Memphis*, the litigants raised issues for the first time either on the day of the court's oral ruling or on the day preceding. In the instant action, Plaintiffs raised the issue of a proposed modified class definition in a post-hearing brief submitted on July 1, 2019, to which Defendants had an opportunity to respond in the form of their own post-hearing brief and during a separate hearing conducted on July 11, 2019, wherein the trial court invited all parties to present additional arguments prior to the court's issuing its oral ruling. The transcript of the July 11, 2019 hearing, for which all parties were present, demonstrates that the parties discussed at length Plaintiffs' proposed modified class definition as detailed in their post-hearing brief. For these reasons, Mr. Newman's argument that Plaintiffs waived their proposed modified class definition is unavailing. Therefore, we will proceed to analyze the question of whether the trial court erred when it did not consider the modified class definition as incorporated in Plaintiffs' post-hearing brief.

Plaintiffs' position on this issue is two-fold. First, Plaintiffs contend that the trial court abused its discretion by failing to consider the modified class definition. Second, Plaintiffs argue that by not considering the modified class definition, the trial court further abused its discretion by failing to "look beyond the pleadings," which, Plaintiffs submit, is required by this Court's decision in *Wofford*, 528 S.W.3d at 540. Plaintiffs contend that had the trial court considered their modified class definition, its conclusion would have been that Plaintiffs met their burden with regard to Tennessee Rule of Civil Procedure 23.01's requirements.

Concerning the first prong of their argument, Plaintiffs assert that the trial court maintained the authority to modify the class definition and that its failure to do so was an abuse of discretion. Specifically, Plaintiffs refer to the trial court's June 19, 2019 hearing, during which the court stated its desire for "the plaintiff to identify the common course of wrongful conduct." Plaintiffs aver that although they did so in the form of a "narrower" definition in their post-hearing brief, the trial court rejected this definition. As such, Plaintiffs posit that the trial court abused its discretion by requesting a revision and subsequently failing to adopt Plaintiffs' proposed change to the class definition. Upon careful review, we determine Plaintiffs' argument to be unpersuasive.

- 10 -

We emphasize that a trial court's determination regarding class certification is discretionary and will not be disturbed absent an abuse of discretion. *See Wofford*, 528 S.W. 3d at 537. As previously noted, a trial court abuses its discretion if it (1) applies an incorrect legal standard, (2) reaches an illogical or unreasonable decision, or (3) bases its decision on a clearly erroneous evaluation of the evidence. *Elliott v. Cobb,* 320 S.W.3d 246, 249-50 (Tenn. 2010). Additionally, a trial court abuses its discretion if it "strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision." *Beecher*, 312 S.W.3d at 524 (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)). However, because accepting or declining a proposed class definition is a legal conclusion, we review this conclusion *de novo* with no presumption of correctness. *Id.* at 525.

In its order denying class certification and expressly adopting Plaintiffs' class definition as set forth in their second amended complaint, the trial court stated:

> All persons who became ill or suffered from the same or similar symptoms as plaintiffs because they drank, consumed, or otherwise came into contact with defendants' contaminated well water at River Drifters Restaurant and River Drifters Adventure Center, 'the restaurant', at 1925 Suck Creek Road, Chattanooga, Tennessee 37415, 'the premises', dined at the restaurant, entered the premises, or came in contact with defendants' infected or symptomatic employees at the restaurant or premises between July 27 and August 14, 2018, <u>and all spouses, parents, children or guardians of those putative class members or those plaintiffs infected after patronizing the restaurant</u>.

(Emphasis added.) In contrast, Plaintiffs' post-hearing brief class definition provided:

> [A]ll persons who became ill or suffered from the same or similar symptoms as Plaintiffs because they drank, consumed, or otherwise came in contact with Defendants' contaminated well water, dined at the Restaurant, entered the Premises, or came in contact with Defendants' infected or symptomatic employees at the Restaurant or Premises between July 27 and August 14, 2018.

Notably, Plaintiffs' post-hearing definition removed the language, "and all spouses, parents, or guardians of those putative class members or those Plaintiffs infected after patronizing the Restaurant" from Plaintiffs' class definition included in their second amended complaint.

A review of the transcript from the July 11, 2019 hearing reveals that the trial court acknowledged and considered Plaintiffs' post-hearing class definition:

- 11 -

TRIAL COURT:    [P]aragraph 61, page 11 of the second amended complaint, plaintiffs seek to represent a class defined as follows:  All persons who became ill or suffered from the same or similar symptoms as plaintiffs because they drank, consumed, or otherwise came in contact with defendants' contaminated well water, dined at the restaurant, entered the premises, or came in contact with defendants' infected or symptomatic employees at the restaurant or premises and all spouses, parents, or guardians of those putative class members or those plaintiffs infected after patronizing their restaurant.

Now, what you've done, and correct me if I miss it, is you have taken out -- in your [post-hearing] brief you have narrowed it to take out the all spouses, parents, or guardians.

MR. VARNER:     That's correct, Your Honor. . . .

* * *

TRIAL COURT:    Okay.  So the difference between your motion to certify class and your [post-hearing] brief . . . is you've taken out the all spouses, parents, children or guardians?

MR. VARNER:     Yes, sir.

TRIAL COURT:    Okay.

MR. VARNER:     It's a narrower definition.  It's people who were actually there on the premises.

Our Supreme Court has previously stated that "[i]t is properly the trial court's prerogative to make the initial determination of and any subsequent modifications to class certification.  The trial court retains significant authority to redefine, modify, or clarify the class." *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 637 (Tenn. 1996).  Moreover, "the trial court retains discretion to . . . define the class." *See id.* at 639.  Our *de novo* review of the record indicates that the trial court, when presented with the option to maintain the existing class definition as defined in Plaintiffs' second amended complaint or deviate from it by adopting the definition proposed by Plaintiffs in their post-hearing brief, properly used its discretion and authority to determine that the former definition would define the class. *See id*.  By expressly adopting the class definition as defined in the second amended complaint, the trial court implicitly rejected the Plaintiffs' modified class

- 12 -

definition as proposed in their post-hearing brief. Therefore, we conclude that the trial court did not abuse its discretion by declining to adopt Plaintiffs' proposed class definition provided post hearing.

Concerning the second prong of Plaintiffs' argument, Plaintiffs posit that the trial court abused its discretion by failing to "look beyond the pleadings" as required by this Court's decision in *Wofford*, 528 S.W.3d at 540. Plaintiffs assert that the trial court "explicitly declined" to look beyond the pleadings. We disagree. The trial court conducted a "rigorous analysis" of the issue concerning the appropriate class definition by conducting a lengthy hearing and considering arguments of counsel, including briefs and in-person oral arguments. Furthermore, as quoted above, the transcript demonstrates that prior to issuing its oral ruling, the trial court expressly considered Plaintiffs' post-hearing brief containing their proposed modified class definition. Ergo, we determine that Plaintiffs' argument that the trial court abused its discretion by failing to "look beyond the pleadings" is unavailing.

As persuasive authority for this conclusion, we note that federal courts have stated that "[t]o maintain a class action, the existence of the class must be pleaded and the limits of the class must be defined with some specificity." *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989) (emphasis added) (citing *Wilson v. Zarhadnick*, 534 F.2d 55, 57 (5th Cir. 1984); *see also Moses v. Weirich*, No. 15-2806-JDT-dkv, 2016 WL 11480129, at *15 (W.D. Tenn. Jan. 19, 2016). Our Supreme Court has previously determined that "because of the identical language in our Rule 23 and in Rule 23 of the Federal Rules of Civil Procedure that federal authority is persuasive." *Meighan*, 924 S.W.2d at 637 n.2 (citing *Bayberry Assocs. v. Jones*, 983 S.W.2d 553 (Tenn. 1990)). Here, because the only class definition that was pleaded by the Plaintiffs was the class definition in their second amended class action complaint, we determine this to be further reason to conclude that the trial court did not abuse its discretion by relying on that definition. *See Newsom*, 534 F.2d at 57.

V.  Prerequisites to Class Action Certification Under Rule 23.01

The gravamen of Plaintiffs' argument on appeal is that the trial court erred by concluding that Plaintiffs had not satisfied their burden, pursuant to Tennessee Rule of Civil Procedure 23.01, concerning the commonality, typicality, and adequacy of representation requirements. We note that the trial court determined that the numerosity requirement in Rule 23.01 was satisfied. Plaintiffs agree with this determination, and Defendants do not take issue with the trial court's ruling in this regard. As such, our analysis of Rule 23.01 will be confined to reviewing the trial court's determinations regarding the remaining elements of Rule 23.01 – commonality, typicality and adequacy of representation. We shall address each in turn.

- 13 -

## A. Commonality

Plaintiffs contend that the trial court erred in determining that the proposed class did not meet the commonality requirement under Rule 23.01. In support, Plaintiffs argue that had the trial court properly adopted Plaintiffs' proposed class definition included in their post-hearing brief, it would have concluded that the commonality element was satisfied. Because we have determined that the trial court did not abuse its discretion by declining to adopt Plaintiffs' proposed class definition as defined in their post-hearing brief, we conclude that Plaintiffs' argument in this regard is pretermitted as moot.

In order to sufficiently address Plaintiffs' additional arguments regarding commonality, it is necessary to first review the trial court's findings and conclusions in its order denying class certification. Concerning commonality, the trial court's order stated as follows:

> Tenn. R. Civ. P. 23.01(2) requires, for the certification of a class, there must be common questions of law or fact to the entire class. The common question need be only a single issue common to all members of the class. Id. That question, however, must be of such a caliber that the ". . . resolution . . ." will advance the litigation." Sprague v. GMC, 133 F.3d 388 397 (6th Cir. 554 1998). Where facts are varied, a common issue may present as a common course of wrongful conduct. See Sterling [*v. Velsicol Chem. Corp.*], 855 F.2d [1188,] 1197 [(6th Cir. 1988)] (finding commonality where no one set of operative facts established liability but each class member lived in the vicinity of the same landfill and allegedly suffered damages as a result of interacting with contaminated water, thereby establishing a single course of conduct identical for each of the plaintiffs).

> In our federal circuit, Modern Holdings, L.L.C. v. Corning, Inc., provides a persuasive opinion that in order for the class to drive litigation, common answers, not just common questions must be possible. Modern Holdings, L.L.C. v. Corning, Inc., No. 5:13-[CV]-00405-GFNT, [2018 WL 1546355] (E.D. Ky. Mar. 29, 2018); Wal-Mart Stores, Inc. v. Dukes, 562 U.S. 1091, 131 S. Ct. 795, 178 L. Ed. 2d 530 (2010). In that case, Plaintiffs provided significant common questions across a large class of landowners allegedly affected by the operations of a glass manufacturing company over a 61-year period. Id. at [*16]. Despite this, the Court found the class was so large and claims of personal injury and property damage from "*twenty-five different substances*" too varied to yield common answers. Id. at [*16].

>> Plaintiffs here present too many potential substances and potential injuries to elicit common answers. For example, causation of one disease based on the alleged contamination of

lead fails to present the same legal question as the causation of a different disease based on contamination of TCE. Plaintiffs ask this Court to find commonality in the allegations of contamination by Defendants with any or all the listed substances. With these bare assertions, Plaintiffs miss the mark. "What matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of class wide proceedings to generate common *answers*." Dukes, 564 U.S. at 350.

Modern Holdings, L.L.C., [2018 WL 1546355, at *8].

When faced with precedent to the alternative set by Sterling, the Modern Holdings court made the distinction that the individual issues of claimants far outweighed the number of common issues. Id. at [*7]. Where Sterling was able to bifurcate by determining actual cause via class representatives and reserve proximate cause determinations for individual hearings, the Court in Modern Holdings found each claimant would raise unique questions of both actual and proximate cause. Id. at [*7-8].

In this case, Plaintiffs allege Defendants had a duty to perform water quality tests, as well as a duty to require employees to inform them of illnesses and exclude them from the premises in those instances. Through this breach, Plaintiffs assert that the differences of infection from E. coli versus norovirus are irrelevant in the context of commonality. Plaintiffs claim this presents common questions arising from the same common nucleus of operative fact, ". . . equally applicable across the class." Id.

A class action is most likely to achieve certification under common wrongful conduct.

Where a common course of wrongful conduct is alleged, commonality is most easily demonstrated. Sterling v. Velsicol Chemical Corp., 855 F.2d 1188, 1197 (6th Cir. l988), see also *Newberg on Class Actions*, § 3.10 ("When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more elements of that cause of action will be common to all of the persons affected . . . ."). A common nucleus of facts is usually enough to satisfy the commonality requirement of Rule 23.01(2). Robinson, 1996 WL 495551, at *2. Finally, separate issues of law and fact regarding damages do not negate class action certification. Meighan, 924 S.W.2d at 637.

- 15 -

Wofford, 528 S.W.3d [at 528-29]. Ostensibly, the above reasoning from Wofford provides the best mechanism for a class action to go forward in a Tennessee food poisoning case. It allows for varied issues, defenses, and fact patterns to operate together with a common core of conduct. Indeed, in the instant case, Plaintiffs' argument attempts to establish such a common course of conduct amongst common class members.

However, Plaintiffs' definition describes two diverging courses: one of the restaurant and premises attendee contrasted with one of contact with an afflicted individual. This is dissimilar from the course of conduct described in Sterling as each class member lived in the vicinity of the defendant's landfill and definitively ingested or interacted with the contaminated water. This Court does not enjoy such concrete proximate causation as the Sterling court did. Sterling, 855 F.2d at 1197.

Instead, the issues here are factually analogous to many presented in Modern Holdings, L.L.C., [2018 WL 1546355]. Just as separate causation issues would arise from the lead and TCE poisonings found in that case, so too is it highly plausible unique questions of legal cause would arise from those issues stemming from E. coli and norovirus. In particular, the broad range of dates further fractures the already tenuous dual courses laid out by the Plaintiffs.

For example, just because a patron got stomach illnesses or the same stomach illnesses as others in the class does not mean that Defendants were liable to both due to potential notice defenses and other defenses including, but not limited to, remedial measures that were taken for cleanliness over time and employee restrictions over time. External factors such as the date of infection impact potential breaches of duty in such a manner exceeding the commonality necessary to a class action. As a further example, a patron contracting E. coli from the well water on July 31 would not provide a common answer for the patron contracting norovirus from an employee on August 12. This would be especially complicated if the employee was asymptomatic.

Ultimately, common damages do not necessarily equate to common liability questions or answers. Here, there are multiple variables that create multiple liability or nonliability scenarios. Multiple pathogens, multiple patrons, multiple exposure dates, multiple means of pathogen transmission, and multiple defendants would lead to multiple liability theories and multiple

defenses without providing common answers to all patrons. Therefore, the commonality requirement has not been met.[1]

We first address Plaintiffs' contention that the trial court's reliance on *Modern Holdings, LLC v. Corning, Inc.*, No. 5:13-CV-00405, 2018 WL 1546355 (E.D. Ky. Mar. 29, 2018), a federal district court case, was misplaced when making its determination that Plaintiffs did not satisfy the commonality requirement. Plaintiffs' primary contention is that the trial court selectively relied on a district court opinion. Although we acknowledge that *Modern Holdings* is a federal district court opinion not binding on this Court, we emphasize that the Tennessee Supreme Court has previously instructed with regard to class

---

[1] We note that in its analysis of the issue of commonality, as quoted above, the trial court relied on a section of this Court's previous decision in *Wofford* that was merely a quotation of the *Wofford* trial court's order and analysis therein, and was not this Court's own independent reasoning and analysis. Specifically, in its order denying class certification, the trial court herein stated:

> A class action is most likely to achieve certification under common wrongful conduct.
>
>> Where a common course of wrongful conduct is alleged, commonality is most easily demonstrated. Sterling v. Velsicol Chemical Corp., 855 F.2d 1188, 1197 (6th Cir. l988), see also *Newberg on Class Actions*, § 3.10 ("When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more elements of that cause of action will be common to all of the persons affected . . . ."). A common nucleus of facts is usually enough to satisfy the commonality requirement of Rule 23.01(2). Robinson, 1996 WL 495551, at *2. Finally, separate issues of law and fact regarding damages do not negate class action certification. Meighan, 924 S.W.2d at 637.
>
> Wofford, 528 S.W.3d 524. Ostensibly, the above reasoning from Wofford provides the best mechanism for a class action to go forward in a Tennessee food poisoning case. It allows for varied issues, defenses, and fact patterns to operate together with a common core of conduct. Indeed, in the instant case, Plaintiffs' argument attempts to establish such a common course of conduct amongst common class members.

Stated differently, this section of *Wofford* is a portion of an extensive quote from the *Wofford* trial court's final order rather than this Court's own analysis of the issues presented in *Wofford*. *See Wofford*, 528 S.W.3d at 527-537. This Court's analysis and reasoning in *Wofford* does not commence until several pages following. *See id.* at 537. Likewise, in their respective briefs, some of the parties herein have made similar affirmations of this Court's "reasoning" from similar sections of *Wofford*, which were also the *Wofford* trial court's reasoning and not this Court's reasoning and analysis. Notwithstanding these misstatements, our research and review of the case law and other authorities that provide the basis for the *Wofford* trial court's reasoning remain valid in Tennessee, as well as in the federal courts of the Sixth Circuit. Therefore, although the source of the reasoning relied upon by the trial court and the parties is not reasoning elucidated by this Court in *Wofford*, the independent principles of law and authority contained within the *Wofford* trial court's reasoning remain valid and will be considered accordingly.

actions that "because of the identical language in our Rule 23 and in Rule 23 of the Federal Rules of Civil Procedure that federal authority is persuasive." *Meighan*, 924 S.W.2d at 637 (citing *Bayberry Assocs. v. Jones*, 783 S.W.2d 553 (Tenn. 1990)). Thus, to the extent that Plaintiffs' challenge lies with the trial court's partial reliance on federal authority, it is without merit. *See id*. Moreover, our review of *Modern Holdings* indicates that it is particularly instructive for our analysis.

In *Modern Holdings*, the plaintiffs filed an environmental mass-tort lawsuit against the owners of a glass manufacturing plant, alleging that the plant intentionally or negligently released toxic chemicals and substances over a period of sixty years, resulting in the plaintiffs' personal injuries and property damages. *Id*. at *1. The plaintiffs subsequently filed a motion to certify the litigation as a class action. *Id*. Following an analysis of Federal Rule of Civil Procedure 23, the district court denied the plaintiffs' motion to certify a proposed class because, *inter alia*, the plaintiffs did not carry their burden concerning the commonality, typicality, and adequacy of representation elements. *Id*. at *6-10.

In determining that the commonality element was not satisfied, the district court relied on a United States Supreme Court case, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), for the principle that "[w]hat matters to class certification is not the raising of common questions–even in droves–but, rather the capacity of classwide proceedings to generate common answers." As applied to the facts in *Modern Holdings*, the district court found that the individual issues of each plaintiff outnumbered the common issues, "precluding the use of 'common answers' to further the case at trial, and barring certification of the proposed class." *Modern Holdings*, 2018 WL 1546355 at *7 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011)). Significantly, the alleged cause of the plaintiffs' injuries consisted of at least twenty-five different substances, such that the court found that "causation of one disease based on the alleged contamination of lead fails to present the same legal question as the causation of a different disease based on contamination of TCE." *Id*. As a result, the *Modern Holdings* court concluded that the plaintiffs had "failed to show their listed common questions [would] elicit *common answers* leading to *classwide* relief." *Id*. at *8.

In the instant case, the trial court relied on the district court's decision in *Modern Holdings* when it undertook its own analysis of the commonality element by analogizing the causation questions arising from the lead and TCE poisonings in *Modern Holdings* to the causation issues stemming from *E. coli* and norovirus in the present case. The trial court ultimately concluded that because "multiple variables" created "multiple liability theories and multiple defenses without providing common answers to all patrons," commonality was not satisfied. We determine that the record supports the trial court's determination that Plaintiffs failed to carry their burden with regard to commonality.

The record reflects that beginning on August 7, 2018, the County Health Department conducted an investigation into the Restaurant following several initial complaints of individuals' becoming ill upon visiting the Restaurant and the Premises. In the County Health Department's resultant report, the investigators provided the following paragraphs as an introductory summary to its findings:

> The [County Health Department] began an investigation on August 7th, 2018 into an outbreak of gastrointestinal illness among patrons and employees of [the Restaurant] in Chattanooga, Tennessee. A total of 105 ill persons self-reported to the Health Department during this investigation, all of whom ate or worked at [the Restaurant] between July 27th and August 12th, 2018. Symptoms commonly reported by the ill included diarrhea, cramps, nausea and fatigue. Nine of ten stool specimens collected from ill individuals tested positive for various pathogens including norovirus, enterotoxigenic *Escherichia coli* (ETEC), enteropathogenic *Escherichia coli* (EPEC) and Shigella at the Tennessee Department of Health Laboratory and private laboratories. A water well sample collected by [TDEC] tested positive for total coliforms and *Escherichia coli*.

Furthermore, the investigators provided the following concluding paragraphs:

> The laboratory confirmed causative agents in this investigation were norovirus and *E. coli*. Both norovirus and *E. coli* are spread via the fecal-oral route. Norovirus is highly contagious and can be spread efficiently through contaminated food or water, from contaminated surfaces, as well as person-to-person. Clinical symptoms of norovirus include nausea, vomiting, diarrhea, abdominal pain, myalgia, headache, malaise, low grade fever or a combination of these symptoms. These symptoms typically last 24 - 72 hours.

> *E. coli* bacteria normally live in the intestines of people and animals. Although most *E. coli* are harmless, some are pathogenic such as enterotoxigenic *Escherichia coli* (ETEC) and enteropathogenic *Escherichia coli* (EPEC) which were identified in this investigation. ETEC and EPEC symptoms include watery diarrhea and fever. Symptoms usually last less than 5 days.

> There were likely various modes of transmission in this outbreak including person-to-person, fomite, foodborne and waterborne. Because roughly half of the [R]estaurant employees were ill, it's likely they spread norovirus person-to-person and possibly through food handling to patrons as well as to co-workers. There was also laboratory evidence that the well water was contaminated with *E. coli* and therefore unsafe to drink. Seven lab

- 19 -

specimens tested positive for ETEC/EPEC indicating that their exposure was likely from the well water. Three people tested positive for *E. coli* (ETEC and/or EPEC) and norovirus. This provides evidence that some patrons were infected with more than one pathogen. It is unknown whether the well was contaminated with norovirus as the well was not tested for viruses. However, epidemiological evidence points to an ill staff member with vomiting and diarrhea - symptoms associated with norovirus - precipitated all other illnesses of patrons and staff.

The County Health Department's conclusion that there were likely various modes of transmission for the illnesses is analogous to the facts in *Modern Holdings*, particularly because there were various causes of the plaintiffs' injuries, leading the district court to conclude that "causation of one disease based on the alleged contamination of lead fails to present the same legal question as the causation of a different disease based on contamination of TCE." *See Modern Holdings*, 2018 WL 1546355 at *7. Similarly, the trial court here, after reviewing the County Health Department's investigative report, determined that multiple modes of transmission of the illness would not provide common answers to all Plaintiffs. We agree.

The County Health Department's seven-page report indicated that one hundred and two ill persons were interviewed, including nine of the Restaurant's food handlers, who had all experienced a similar gastrointestinal illness. The manager of the Restaurant related that twelve of the Restaurant's twenty-five employees had been ill and that one employee was known to be working at the Restaurant while symptomatic. That employee's symptoms, the County Health Department found, were consistent with the symptoms complained of by the Restaurant patrons.

The County Health Department concluded that it was likely that some individuals were exposed to *E. coli* via well water. It was also unknown to the County Health Department whether the well was contaminated with norovirus because the well was not tested for norovirus. However, because many of the Restaurant employees were ill, the County Health Department opined that it was likely that norovirus was spread person-to-person, including from employees to patrons who dined at the Restaurant. Furthermore, according to the report, several individuals tested positive for both *E. coli* and norovirus, demonstrating that each of the pathogens may have come from varied sources. Thus, a fundamental determination of the causal link between Plaintiffs' illnesses and the contaminated origin was not expressed. Stated differently, it was inconclusive whether Plaintiffs' illnesses, as well as their contact with *E. coli* and norovirus, derived from the same source.

The commonality requirement cannot be met inasmuch as Plaintiffs maintain a variety of issues, "each of which presents a unique question of both actual and proximate causation," namely whether one or more of the Plaintiffs contracted their respective

illnesses from the contaminated well water, whether it was contracted from person-to-person contact with employees who were contagious or from some other unidentified source. *See id.* The trial court delineated these variables in its order denying class certification, stating that it is "highly plausible unique questions of legal cause would arise from those issues stemming from *E. coli* and norovirus." Following our thorough review of the record, we determine that by reason of multiple variables, Plaintiffs cannot establish that "common questions will elicit common answers leading to classwide relief." *Id.* at *8. Accordingly, we conclude that the trial court did not abuse its discretion by determining that commonality was not satisfied.

Plaintiffs assert that it is immaterial whether a class member becomes infected with *E. coli* or norovirus so long as the source originated from Defendants' conduct. On appeal, Plaintiffs seek this Court's determination that commonality exists based on the answers to the following questions: "Did [Defendants] breach their duties owed to [Plaintiffs]? Did [Defendants] cause [Plaintiffs'] damages?" However, the respective answers only provide two of the five elements for negligence, the primary theory of liability under which Plaintiffs seek to proceed. *See Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998). In his brief, Mr. Newman posits that these queries are not questions unique to Plaintiffs' proposed class but rather are issues applicable to any and every negligence case. According to Mr. Newman, if these questions were the predicate for commonality, every negligence claim would maintain commonality. We agree. As previously stated, the existence of the identified multiple variables precludes a conclusion that Plaintiffs' "common questions will elicit common answers leading to classwide relief." *Modern Holdings*, 2018 WL 1546355 at *7.

Additionally, such a generalized approach as proposed by Plaintiffs is inconsistent with this Court's previous instruction to "conduct a rigorous, thorough, and careful analysis of the issues related to the standards of Tenn. R. Civ. P. 23 before certifying a class action." *Gov't Emps. Ins. Co. v. Bloodworth*, No. M2003-02986-COA-R10-CV, 2007 WL 1966022, at *7 (Tenn. Ct. App. June 29, 2007) ("Although Tennessee appellate courts have not yet expressly or specifically adopted the rigorous analysis standard, we find no basis for exempting Tennessee trial courts from the requirement that they conduct a rigorous, thorough, and careful analysis of the issues related to the standards in Tenn. R. Civ. P. 23 before certifying a class action."). As Mr. Newman correctly observes, Plaintiffs' generalized approach is also irreconcilable with Plaintiffs' contention that the trial court did not conduct a rigorous analysis when it declined to adopt their modified class definition as defined in their post-hearing brief. Plaintiffs' argument in this regard is unavailing.

Plaintiffs additionally argue that the trial court should have relied on two decisions in lieu of relying on *Modern Holdings*. Particularly, Plaintiffs cite to *Sterling v. Veisicol Chem. Corp.*, 855 F.2d 1188 (6th Cir. 1988), and *Wofford*, 528 S.W.3d 524, as supportive authority for their argument that the commonality element was satisfied.

In *Sterling*, the Sixth Circuit found class certification proper concerning a landfill, which had contaminated the ground water for roughly one-thousand acres surrounding the landfill site. *Id*. at 1192-94. However, Plaintiffs do not support their assertion that *Sterling* controls the disposition of the present appeal with any argument, analysis, or analogy of the facts of this case to *Sterling*. Furthermore, our review of the record indicates that the trial court did consider *Sterling* and found it to be distinguishable from the case at bar, stating:

> However, Plaintiffs' definition describes *two* diverging courses: one of the restaurant and premises attendee contrasted with one of contact with an afflicted individual. This is dissimilar from the course of conduct described in <u>Sterling</u> as *each* class member lived in the vicinity of the defendant's landfill and definitively ingested or interacted with the contaminated water. This Court does not enjoy such concrete proximate causation as the <u>Sterling</u> court did.

(Internal citation omitted.) We agree with the trial court's analysis in this regard considering *Modern Holdings* as analogous to the case at bar.

Additionally, the plaintiffs in *Modern Holdings* presented a similar argument that *Sterling* should control the outcome in *Modern Holdings*. *Modern Holdings*, 2018 WL 1546355, at \*7. As the Restaurant correctly notes, following the district court's discussion of *Sterling*, the court observed that *Sterling* was decided approximately ten years prior to the United States Supreme Court's decisions in *Amchem Prod. v. Windsor*, 521 U.S. 591 (1997) and *Dukes*, 564 U.S. 338 (2011). *See Modern Holdings*, 2018 WL 1546355, at \*8. Although the court in *Modern Holdings* did not suggest that *Sterling* had been overruled, the court acknowledged that since *Amchem* and *Dukes*, many courts had refused to certify classes for mass tort claims "because of dispersed personal injury . . ." including "individual issues of exposure, causation, and/or damages . . . ." *Modern Holdings*, 2018 WL 1546355, at \*14. Similar issues, especially causation, are present in the instant action. We therefore conclude that the trial court did not abuse its discretion by declining to rely on *Sterling*.

Plaintiffs also assert that the trial court erred by declining to rely on *Wofford*, 528 S.W.3d 524. In support of their argument, Plaintiffs cite to *Wofford* for the proposition that "[c]ommonality for class certification requires that there must be questions of law or fact that are common to the class." *Id*. at 528.[2] Plaintiffs assert that their claims satisfied the commonality requirement in that all class members became ill after they ate or drank

---

[2] As addressed earlier in this opinion, the Plaintiffs herein cite to a section of *Wofford* that is merely quoting the *Wofford* trial court's final order. Because our research reveals that each of these propositions, taken alone, are valid principles of law in our State and in our federal circuit, we will accordingly consider the arguments presented therein, acknowledging that these principles were not expressly adopted in *Wofford*.

at the Restaurant, entered the Premises, or interacted with the Restaurant employees on the Premises, circumstances which Plaintiffs contend establish questions of law or fact that are "common to the class." Plaintiffs posit that each of these common questions of law or fact arise from a common nucleus of operative facts, namely that Defendants "maintained an unsanitary restaurant and injured the public at large."

Plaintiffs in the instant action have not established that a classwide proceeding will generate common answers "apt to drive the resolution of the litigation." *See Dukes*, 564 U.S. at 350. Therefore, Plaintiffs' argument in this regard is unavailing. We conclude that the trial court did not abuse its discretion by determining that Plaintiffs failed to satisfy their burden concerning commonality pursuant to Rule 23.01(2).

## B. Typicality

Plaintiffs argue that the trial court abused its discretion when it determined that the claims or defenses of the class representatives were not typical of the class claims or defenses. Specifically, Plaintiffs contend that by "serving and utilizing contaminated water and allowing employees to work while symptomatic with illnesses," Defendants caused Ms. Rogers and the class members' injuries, rendering applicable the same proof respecting the class members.

In its order denying class certification, the trial court made the following findings and determination with regard to typicality:

> The same difficulties Plaintiffs face in establishing commonality predominate here. Factual variations between the class members are not simply the extent of the injuries presented, but the means of acquisition, the time of acquisition, and the standard of care owed to the individuals upon acquisition. The answer for one patron's case would not be typical for all patrons for the same reasons that frustrate commonality.

> Plaintiffs posit that a bifurcated trial broken into phases establishing the four elements of negligence with duty and breach tried in a standard class action suit. However, contrary to Wofford where factual anomalies in the burials of loved ones had no effect on possible defenses or legal theories, establishing duty to the representatives would be a wholly unique process from doing so for a patron that never consumed food or beverage. Furthermore, the defenses available to defendant Newman against individuals infected by an ill employee allowed to continue serving food may be inapplicable to [Ms. Rogers]. So too is [the Restaurant] potentially unable to present defenses for those individuals who were merely "on the premises" or consumed the well water before the restaurant had notice of the issue.

- 23 -

It is here, as in commonality above, that the dual courses of conduct in the proposed definition split from the purpose of a class action. Though there are numerous people, there is no common core to the questions of law. When there is no common core to the legal issues themselves, logically, the claims of the class representatives are unlikely to be typical to all class members. Contracting norovirus from an employee becomes a question predominated by the duties of the restaurant owner in August. However, contracting E. coli from the well in July would focus more on the claims of both [the Restaurant] and Newman. In the latter instance, defendant Newman's conduct and liability will have a more prominent role than the former. As another example, a plaintiff contracting E. coli from well water before reasonable inquiry notice would not be typical to those with norovirus from employee contact after reasonable inquiry notice. In each instance, the claims diverge beyond the point where this Court can find typicality.

The matter before this Court does not involve a singular event. As with commonality, a same practice or course of conduct cannot be established due to the multiple dates, pathogens, and means of transmission. Therefore, the typicality element has not been met to certify this class action.

(Footnote omitted.)

Upon thorough review, we determine that the record supports the trial court's determination that Plaintiffs failed to satisfy their burden with regard to typicality. Rule 23.01(3) provides in relevant part that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if . . . (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class." As this Court has previously explained with regard to typicality:

"[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Freeman* [*v. Blue Ridge Paper Prod., Inc.*,] 229 S.W.3d [694,] 703 [(Tenn. Ct. App. 2007)] (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)) (alteration in original) (citation omitted) (internal quotation marks omitted). The typicality inquiry focuses on whether the legal and remedial theories of the class representatives are sufficiently similar to those of the unnamed class members. *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir. 1999) (citing *Lightbourn v. Cnty. of El Paso, Tex.,* 118 F.3d 421, 426 (5th Cir. 1997)); *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) (citations omitted).

- 24 -

"A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *In re Am. Med. Sys., Inc.,* 75 F.3d at 1082 (citing 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 3.13 (3d ed. 1992)). "The typicality requirement reflects the belief that a class action's progress should not be compromised by a diversion of attention from the substance of the basic claim involved in the case." *Bayberry Assocs. v. Jones,* 87-261-II, 1988 WL 137181, at *9 (Tenn. Ct. App. Nov. 9, 1988) (citation omitted), *vacated for lack of a final judgment,* 783 S.W.2d 553 (Tenn. 1990). "Its purpose, therefore, is to screen out class actions in which the legal or factual position of the representative party is markedly different from that of the other members of the class, even though common issues of law or fact may also be present." *Id.* (citations omitted).

The claims or defenses of a class representative are atypical if a defense unique to that person or a small subclass is likely to become a major focus of the litigation. *Koos v. First Nat. Bank of Peoria,* 496 F.2d 1162, 1164-65 (7th Cir. 1974) (citation omitted); *see also In re Schering Plough Corp. ERISA Litig.,* 589 F.3d 585, 599-601 (3d Cir. 2009); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir. 1990) (citations omitted); *Rolex Emps. Ret. Trust v. Mentor Graphics Corp.,* 136 F.R.D. 658, 663–64 (D. Or. 1991) (citations omitted). Regardless of whether courts frame this issue in terms of typicality or adequacy of representation, the danger is that a class representative will not properly advance the interests of the absent class members if overly concerned with defenses or affirmative defenses unique to him. *Gary Plastic,* 903 F.2d at 180 (citations omitted); *see also Beck v. Maximus, Inc.,* 457 F.3d 291, 301 (3d Cir. 2006) ("A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation.").

*Roberts v. McNeill*, No. W2010-01000-COA-R9-CV, 2011 WL 662648, at *6 (Tenn. Ct. App. Feb. 23, 2011) (footnotes omitted).

Our review of the record reveals that Plaintiffs' claims lack typicality for many of the same reasons that their claims lacked commonality. As we expressed in the previous section, Plaintiffs' claims amount to two separate courses of conduct. The first occurred when several plaintiffs became ill by consuming water from the private well, which was determined by the County Health Department to be contaminated. The other course of conduct occurred when several plaintiffs came into contact with a contagious employee. Mr. Newman posits, and we agree, that because of these two separate courses of conduct, the "modes of transmissions are different, the causation proof is different, and the facts

surrounding the alleged negligence will be different." The purpose of typicality is thereby thwarted because "the legal or factual position of" Ms. Rogers is "markedly different from that of the other members of the class, even though common issues of law or fact may also be present." *See Roberts*, 2011 WL 662648, at *6 (quoting *Bayberry Assocs.*, 1988 WL 137181, at *9).

Plaintiffs urge that by focusing on the "multiple courses of alleged transmission," the trial court erred by conflating its analysis of commonality with typicality. Notwithstanding their argument, Plaintiffs assert, as they did with commonality, that the proper analysis is whether "[e]ach class member ate, drank, or entered the Restaurant between the appropriate time period" because "[e]ach class member became sick after going to the Restaurant and [the Premises]." For reasons previously explained, we disagree with Plaintiffs' contention in this regard. Such an overly generalized analysis of the issues is irreconcilable with this Court's previous instruction for trial courts to conduct a rigorous analysis of issues presented by class certification. *See Wofford*, 528 S.W.3d at 539-40 (citing *Bloodworth*, 2007 WL 1966022, at *8, 14, 22). Furthermore, this Court has expressly stated that conducting a rigorous analysis includes "an evaluation of whether common questions of law or fact predominate over individual questions and whether class action provides the superior method of resolving the claims." *Wofford*, 528 S.W.3d at 540.

It is unclear whether the proposed class representatives, Ms. Rogers and Eric Rogers, became ill from consuming the contaminated well water or from person-to-person contact with a contagious employee of the Restaurant. According to Plaintiffs, the respective "answers" are immaterial to the analysis because the "individual differences between each sickness are not material to the legal theories underlying each individual case." To the contrary, the County Health Department concluded in its investigative report that the well water was contaminated with *E. coli* and that several individuals tested positive for *E. coli*, evincing that the source of these individuals' illnesses was likely the well water. Other individuals, however, tested positive for norovirus, which the County Health Department concluded was likely spread by person-to-person contact. Because under these facts the differences in illnesses tend to demonstrate the causation of Plaintiffs' injuries, and because the origin of Eric Rogers's and Ms. Rogers's illnesses is unclear, we determine that a finding of typicality is further complicated. As such, the trial court did not abuse its discretion by finding that no typicality existed, in part, based on the various modes of transmission of illnesses.

Assuming, *arguendo*, that it was known that certain plaintiffs became ill specifically from consuming the well water, problems with typicality would persist. To be sure, a plaintiff who contracted *E. coli* from the well water after the Restaurant was on notice that the well was contaminated would contrast with a plaintiff who became ill from consuming the well water prior to the Restaurant's having notice of the same. One plaintiff's claim would not be typical of the other insofar as different claims and defenses would be presented by the facts. Plaintiffs posit that it would be erroneous to consider various

defenses of Defendants.  We disagree.  *See Roberts*, 2011 WL 662648, at *6 ("The claims or defenses of a class representative are atypical if a defense unique to that person or a small subclass is likely to become a major focus of the litigation.") (quoting *Koos*, 496 F.2d at 1164-65).  Inasmuch as multiple claims and defenses are likely to arise under the facts, we agree with the trial court's determination that Plaintiffs did not satisfy their burden, pursuant to Rule 23.01(3), concerning typicality.

## C.  Adequacy of Representation

Plaintiffs also argue that Ms. Rogers is an adequate representative of the class because she is "united with the class members, and class counsel are experienced in complex civil litigation, including class and collective actions, and in personal injury matters."  In finding that Plaintiffs failed to carry their burden concerning Rule 23.01(4), the trial court stated:

> As with typicality, the absence of commonality leads to a fatal absence of adequate representation which prevents this Court from certifying the proposed class.  Multiple pathogens, multiple dates of transmission, multiple methods of transmission, multiple patrons, multiple duties, and multiple defendants preclude representative plaintiffs from protecting the interests of every member in the proposed class. For example, were a representative plaintiff to receive E. coli from well water after reasonable inquiry notice, he or she may have a different or better chance of success, but he or she would not be able to protect a plaintiff who received norovirus before reasonable inquiry notice as the latter may have a worse chance than the former.

> Trial courts must make a rigorous investigation beyond the pleadings in certifying or denying a class action.  Gariety v. Grant Thornton, L.L.P., 368 F.3d 356, 367 (4th Cir. 2004).  This Court's rigorous investigation is substantially complicated by the test for adequacy of representation.  After a thorough investigation of the facts, it is without question that the proposed class would have qualified counsel.  However, investigation shows this Court that it is not possible for the class representatives to protect the entire class.

> Of the ten stool samples submitted by Plaintiffs, three tested positive for both norovirus and E. coli.  Health Department at 000036 Table 2.  In order to represent this entire class in both infections, it would be reasonable to expect representation to stem from there.  However, as with typicality above, contracting both diseases does not address liability differences between the Defendants, nor does it address shifting standards which may arise from the broad range of dates.  Even if this Court were to take the liberty of assuming that the representatives contracted both norovirus and E. coli from a single drink of well water despite the absence of a test for norovirus

from the water source, it is not possible to reconcile the variables in transmission and timing. That representation could not establish a basis of liability for transmission of norovirus contracted from employee contact without compromising representation for those proven not to have ingested the water. In short, no combination of individuals and illnesses can reasonably provide adequate representation.

Not only is adequacy of representation encumbered by a lack of common answers, but also by the Defendants against which the Plaintiffs bring suit. If commonality were to have been found, there can be no guarantee that the representatives would work in the best interests of the entire class with both defendants, land owner and restaurant. This Court makes no conclusions as to the extent of Mr. Newman's liability. However, it is reasonable to expect that the proof required for subsequent employee contact and negligent sanitation efforts within the restaurant itself may have little to do with initial, earlier claims against Mr. Newman's negligence surrounding the well in a trial setting. Thus, the broad definition of the proposed class creates potential conflicts of interest within the class itself. That same potential antagonism was a basis for defeating the proposed class in the famous In re Teflon Products Liability Litigation case. In re Teflon Prods. Liab. Litig., Civil No. 4-06-md-01733 [254 F.R.D. 354] (S.D. Iowa Dec. 5, 2008).

Rule 23.01 provides in relevant part that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if . . . (4) the representative parties will fairly and adequately protect the interest of the class." Concerning Rule 23.01(4), this Court has previously stated that "the proposed class representative 'must have common interests with the unnamed class members and it must appear that the class representatives will vigorously prosecute the case and protect the interests of the class through qualified counsel.'" *Highlands Physicians, Inc. v. Wellmont Health Sys.*, No. E2017-01549-COA-R3-CV, 2017 WL 6623992, at *7 (Tenn. Ct. App. Dec. 28, 2017) (quoting *Wofford*, 528 S.W.3d at 537-38). "This 'adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of other class members.'" *Modern Holdings*, 2018 WL 1546355, at *9 (quoting *In re Am. Med. Sys.*, *Inc.*, 75 F.3d [1069,] 1083 [(6th Cir. 1996)]. Furthermore, a court cannot presume the existence of adequate representation. *Id*. at *10.

Upon careful review, we determine that the trial court did not err in finding that Plaintiffs failed to satisfy their burden with regard to the adequacy of representation. The trial court conducted a rigorous analysis concerning this issue. The trial court found, and we agree, that "[m]ultiple pathogens, multiple dates of transmission, multiple methods of transmission, multiple patrons, multiple duties, and multiple defendants preclude representative plaintiffs from protecting the interests of every member in the proposed

class." As with commonality and typicality, many variables arise under this prong of the analysis when considering, for instance, whether a patron who became ill after contact with the contaminated well water could adequately protect the interests of another patron who may have contracted an illness from person-to-person contact with an employee.

Moreover, as the trial court alluded to in its order denying class certification, multiple variables arise when considering that Defendants consist of the owner of the Restaurant and the landowner of the Premises, such that illnesses arising from employee-to-patron contact and issues surrounding the Restaurant's sanitation efforts are very likely to have effect on issues related to Mr. Newman's liability or non-liability as a landowner of the Premises. Potential plaintiffs who may have claims solely against the Restaurant would not adequately represent the interests of those who may have claims only against Mr. Newman.

Plaintiffs additionally assert that this Court should reverse the trial court's finding in this regard in part because Plaintiffs "all suffered direct injury by becoming infected with norovirus, *E. coli*, or both through eating or drinking at [the Restaurant], entering [the Premises], or coming into contact with [the Restaurant's] infected employees." However, as we have determined, this proposed analysis is overly broad, especially in light of this Court's instruction for lower courts to conduct a rigorous analysis of the issues related to class certification. *See Wofford*, 528 S.W.3d at 539-40 (citing *Bloodworth*, 2007 WL 1966022, at *8, 14, 22). Thus, Plaintiffs argument in this regard is also unavailing.[3] We conclude that the record supports the trial court's findings and determination that Plaintiffs have not satisfied their burden with respect to the commonality, typicality, and adequacy of representation requirements of Rule 23.01.

## VI. Maintainability under Rule 23.02

The Restaurant raises the additional issue of whether the trial court erred by determining that the case would be maintainable as a class action, pursuant to Tennessee Rule of Civil Procedure 23.02(1)(b), if Plaintiffs had satisfied the requirements of Rule 23.01. With respect to Rule 23.02, the trial court found that "[h]ad the action survived Tenn. R. Civ. P. 23.01, it could be maintained under 23.02(1)(b)." Rule 23.02(1)(b) provides in relevant part:

An action may be maintainable as a class action if the prerequisites of 23.01 are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

---

[3] As quoted in analysis above, the trial court determined that "it is without question that the proposed class would have qualified counsel." The parties do not dispute this finding.

\* \* \*

>    (b)  adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interest; [. . .]

Having determined that Plaintiffs' proposed class does not meet the commonality, typicality, and adequacy of representation requirements of Rule 23.01, we further determine the issue of maintainability of the class, pursuant to Rule 23.02, to be pretermitted as moot.

## VII.  Conclusion

For the foregoing reasons, we affirm the trial court's order denying Plaintiffs' application for class action certification.  This case is remanded to the trial court for further proceedings consistent with this opinion and collection of costs assessed below.  Costs on appeal are taxed to the appellants, M.E. Pearson, Timothy Hargiss, Joan Broome, Tina Rogers, Eric Rogers, David Broome, Barry Condra, Amanda Hargiss, Perry Hixson, Stacye Hixson, J.M. Pearson, Britt Self, and Timothy Barnett.

_____
THOMAS R. FRIERSON, II, JUDGE